## MAY, ET AL. v. NABORS.

1. Where a bill single, not rendered negotiable by endorsement, is entrusted by the payee to an agent to collect, and he sells it for a fair and valuable consideration, to a third person, and he to another, who sues in the name of the payee, to his use, and obtains judgment, a court of equity will consider him a trustee for the payee, and compel him to account for the proceeds.

WRIT of Error to the Court of Chancery for Greene county.

The bill in this case was filed by Nabors against May and others, and alleges that in September, 1839, John P. Savage and Asa White executed to Nabors, a writing obligatory, for 166 dollars, payable to him sixty days after date. That in December of the same year, Nabors, then residing in Jefferson county, committed the writing obligatory to one W. H. Patterson for collection, and took his receipt. This receipt describes the writing obligatory, and contains an agreement to collect or return it, reserving twenty-five dollars due from Nabors to Patterson. The bill further alleges, that Patterson afterwards transferred the writing obligatory to May, without the knowledge or consent of Nabors. That May early in 1840, commenced a suit on it in

the county court of Greene county, and recovered judgment against White, (Savage not being served with process,) in the name of Nabors, for the use of May. That Patterson left the State soon after the transfer of the paper to May, and is now residing in Texas, and is insolvent. That just before the exhibition of the bill, Nabors ascertained the fact of transfer to May, when he called upon him, showed him Patterson's receipt, and requested control of the judgment and collection of the money, which May refused.

The bill prays a decree that May surrender all control over the judgment and collection of the money to the complainant, and that the writing obligatory, if required by him, may be withdrawn from the files of the court, and for an injunction restraining May, his attorney, &c. from collecting the money.

The answer of May denies all knowledge of the transactions between Patterson and Nabors, except from information from the latter, and requires strict proof of all the allegations affecting his rights. It admits the suit and recovery of the judgment against White on the writing obligatory, in the name of Nabors for his use, and sets forth in detail, how he acquired possession of the paper, which was thus:

Early in 1840, one Ja's Hatter of Greene county, residing about a mile distant from the residence of May, offered to trade the writing obligatory with him, and then informed May that he had received it from Patterson, who then was residing at Eutaw, in the same county, in payment for a quantity of corn delivered to Patterson. May agreed to give Hatter, for the bond, a quantity of corn, estimated at $110, a quantity of lumber and groceries worth $20 and to pay him $35 in cash, when the money should be collected on the bond making in all $166, provided he should be satisfied there were no offsets against it. Before receiving the bond, May went to Eutaw in company with Hatter, and called on Patterson for information with respect to the bond, and was assured by him that the paper was perfectly good, and that there were no offsets against it. May having no information or suspicion that Patterson had fraudulently or improperly sold the bond to Hatter, but believing Patterson had been fairly and honestly the owner of it, and also that he had sold to Hatter for a full, fair and valuable consideration, took it from him on the terms agreed on, and delivered the corn, lumber and groceries, and bound

4

himself to pay the remainder when collected. The evidence for the complainant established the receipt of Patterson; and that of the defendant May, very fully sustained his answer as to the sale of the bond by Patterson to Hatter, and by him to May.

The chancellor decreed in favor of the complainant, and awarded execution against May on a refunding bond executed by him with sureties, he having collected the money on the judgment, but directed the execution to be credited with 25 dollars and the accruing interest, that sum appearing from the receipt to be due from Nabors to Patterson, and which was to be retained by the latter out of the note when collected.

MURPHY, for the plaintiff in error, insisted that the decree should have been in favor of May, inasmuch as Nabors had confided the bond to Patterson for collection, and thus enabled him to perpetrate a fraud upon Hatter, and through him upon May, who was an innocent purchaser for a fair consideration. It might also be considered as within the scope of Patterson's authority to trade off the note for its value in corn. Another feature in this case distinguished it from a mere case of agency.— Patterson had an actual interest in the bond for the amount due him from Nabors, and this circumstance would sustain a sale of it.

J. B. CLARK, *contra*, was stopped by the court.

GOLDTHWAITE, J.—It is obvious, from the facts of this case, that a loss must fall on one of two innocent persons; but we entirely concur with the chancellor in the opinion, that the equities of these parties are by no means equal. It was apparent from the writing obligatory, that Nabors had never transferred the legal interest to any one, consequently, any person offering to deal for it, was necessarily put on the inquiry as to the right of the holder. Had the question been asked of Patterson, it is by no means improbable the defendant would, by his answer, have seen he was not authorised to dispose of it.

It is unnecessary to go into an examination of all the cases which could be collected on this subject, because the principle which must govern this case, has long since been settled with us. In Kirk vs. Glover, [5 S. & P. 340,] an attorney had taken a bill single in discharge of his client's judgment, and afterwards

traded it away without the knowledge of his principal. It was held that the principal could ratify the unauthorised act of the attorney in taking the bill single, and maintain trover against one to whom he had sold it. There, as here, there was an agency, but the act of the agent was without the scope of his power, and the purchaser was held responsible to the actual owner. The case of Gullet vs. Lewis, [3 Stewart, 23,] turned on a similar principle.

It has been supposed, the circumstance that the agent had an interest to a limited extent in the money to be collected, creates such a destruction as will sustain his unauthorised sale, but it is evident that no interest in the writing obligatory, was transferred, or intended to be transferred to him. His interest was not in the note, but in the collection of it. But if it was conceded that he had a partial interest in the note itself, the decision in Lucas vs. Kernodle, [2 Ala. Rep., N. S. 199,] settles that the equity could be reached, although the note was actually transferred.

Decree affirmed, with costs.