## DUNN v. DUNN.

1. Where the payee of a note deposits it in the hands of an agent to be collected, who causes a suit to be instituted thereon in the payee's name, for his own use, and upon a judgment being obtained, refuses to yield the control thereof, but insists upon collecting and appropriating the proceeds to himself, a Court of Equity may enjoin the agent from all further interference, and the defendants in the judgment from paying the same, until the matters shall be there heard and adjudicated.

2. The complainant alledges that he placed a note in the hands of the defendant to collect, on which the latter recovered a judgment for his own use, and insisted on appropriating the proceeds; the defendant, in his anser, insisted that the note was placed in his hands to collect, and pay himself what the complainant then owed him, and for subsequent advances: Held, that so far as the answer seeks to charge the complainant, it is irresponsive to the bill, and the *onus* of sustaining it rests upon the defendant.

3. The assignment of an account by the party to whom it purports to be due, and testimony that he (having since died) kept correct accounts, does not sufficiently establish its justness to authorize the assignee to set it off to a suit in equity against him, brought by the person charged with it.

4. A reference to the Master, prematurely made, and embracing a matter which the Court should have first considered, will not be available on error, where the parties acquiesced in the irregularity.

5. Where a bill is for *discovery* and *relief*, if the answer, instead of furnishing a discovery, is a denial of the matter alledged, it is competent for the complainant to make out his case by proof.

Writ of Error to the Chancery Court of Benton.

THE defendant in error filed his bill, setting forth, that on the first of January, 1838, Peter Walden and John Boozer, made their bill single, by which they promised to pay to him, or bearer, the sum of six hundred dollars, twelve months after date; that in February, 1839, being about to leave the State, he deposited the same in the hands of Henry Dunn as his agent, without investing him, either by contract or otherwise, with any other interest therein; that afterwards, his agent caused the writing to be put in suit in the name of the complainant, for his own use, and thus

recovered a judgment against the obligors in the Circuit Court of Benton, for the sum of five hundred and ninety dollars, besides costs.

It is further stated, that an execution had issued on the judgment and was in the hands of Robert S. Porter, the sheriff of Benton, at the time of the exhibition of the bill; that the complainant had given notice to the attorneys who conducted the suit at law, as well as to the defendants in the judgment, and the sheriff, of his claim to the money that might be collected thereon; and prohibited its payment to his agent. The complainant had demanded of Harris Dunn the attorney's receipt which he had taken, or that the control of the judgment be given to him, which was refused, &c. The bill concludes with a prayer for an *injunction* and *subpoena;* both of which were regularly issued.

The bill was answered by Henry Dunn, denying that the writing in question was left with him as the complainant's agent, to put into an attorney's hands for collection, and take a receipt therefor in the complainant's name, and alledging that he received it under the following circumstances, viz: The complainant being about to leave the State, to remain abroad for an indefinite period, purchased some property of respondent, (which is particularly mentioned,) was indebted to him in the sum of one hundred and twelve dollars for merchandize sold, and money lent, also in several promissory notes, the amounts and dates of which are particularly stated. To secure these several sums the complainant gave respondent the specialty, to collect by suit and apply the proceeds to the payment of his own demand. It was further agreed between the complainant and defendant, that as the latter was to leave his wife and children in this State, the former should give them such necessary assistance as he could during the absence of the defendant. Under this branch of the agreement, the respondent paid several sums of money, and gave his individual notes in order to protect his property from being seized and sold by his creditors, and his family from being distressed, all which are particularly stated with reference to the creditors, amount, &c. These payments it is alledged, were made at the request of the complainant's wife. In addition to this, respondent alledges, that he has had to encounter difficult and protract ed litigation in the recovery of the judgment. Whenever the

99

complainant will pay respondent what he justly owes him, he will renounce his lien upon the judgment, and so informed the complainant before he filed his bill.

The defendants, Walden and Boozer, moved the Court to dismiss the bill as to them, for want of equity, which motion was overruled. Then the defendant, Dunn, moved the Court to dissolve the injunction, upon his answer; this motion was granted upon the execution of a refunding bond; and it was thereupon referred to the Master to ascertain the facts in respect to the alledged agreement by the complainant to pledge the specialty in question to the respondent, and to take and report an account of the sums paid by the latter for the former, or due from the former to the latter.

The evidence taken before the Master accompanies his report, and is referred to; his conclusions are, 1. That the note of Walden and Boozer was only delivered to the respondent as a friend of the complainant, to be collected for the use of the complainant, and not as collateral security as alledged in the answer of respondent. 2. That at the time the note was placed in the hands of the respondent, the complainant owed him but a small sum of money, if any thing; but since that time the respondent has paid money for him, &c., which in equity should be refunded, the aggregate amount of all which is $372 05. 3. That after deducting the sum due the respondent, the balance of the judgment, viz: $263 66, should be paid to the complainant.

Exceptions were taken to the report by the respondent, and overruled. The Chancellor was of opinion that from the proof, it was difficult, if not impossible to ascertain with exactness, the state of accounts between the parties, that the report of the Master was as favorable to respondent as it could be, and rendered a decree accordingly, adjudging that each of the parties in controversy pay a moiety of the costs. The defendant, Dunn, alone assigns error.

S. F. Rice, for the plaintiff in error, made the following points: 1. The complainant had a plain and adequate remedy at law for the conversion of the specialty, and consequently the bill should have been dismissed for want of equity. [1 Story's Eq. 439-40; 2 Johns. Ch. Rep. 169, 171; 1 Litt. Rep. 86; 22 Maine's Rep. 207; 8 Porter's Rep. 63; 3 Ala. Rep. 521; 7 Ala. Rep. 585.]

2. The bill should have been dismissed because the answer did not make the discovery sought, (1 Story's Eq. 436-7,) or because the *allegata* and *probata* did not correspond, or because there was no proof that the complainant demanded the writing before the bill was filed. 3. The decree is founded upon the report of the Master, which is opposed to the proof, and entirely misconceives it. One witness testified that Walden and Boozer's note was given to Henry Dunn, to secure him in what the complainant owed, that the balance due thereon was to be collected for the use of the complainant's family, and that the complainant said the defendant, Dunn, should lose nothing for attending to his business. Three other witnesses who were examined, merely state that the paper was placed in Henry Dunn's hands *for collection*, without denying that he had a lien upon it. The testimony of these witnesses is clearly reconcileable with each other.

4. The items of the account of Henry Dunn, on which the Master reported favorably, amounted to $436 91, on the 18th July, 1843, and those rejected by him amount to $265 05, and leave a balance in favor of the defendant, after allowing him to appropriate the entire judgment, of $53 03. This will appear from the evidence and the answer, which fully sustains the rejected items. 5. No costs should have been adjudged against the defendant, Dunn. [6 Ala. Rep. 518.]

No counsel appeared for the defendant in error.

COLLIER, C. J.—In Kirkman, et al. v. Vanlier, 7 Ala. Rep. 217, we stated quite at large the grounds upon which Courts of Equity exercise jurisdiction in matters of account, and it is not necessary here to repeat them. In cases of agency, a more enlarged jurisdiction has sometimes been assumed. It has been said, that although an action at law will lie against one in whose hands money had been deposited to lay out in the purchase of an estate, or any other thing, yet a bill in equity may be filed against him, praying that he may lay out the money, upon the hypothesis that he is a trustee. And where an assignment is made to a factor, for sale, bills have been entertained, notwithstanding there is a clear remedy at law, if the principal had thought proper to proceed in that way. [See Scott v. Surman, Willes's Rep. 405.] But Mr. Justice Story says, that the true

source of jurisdiction in such cases, is not the mere notion of a virtual trust; for then equity jurisdiction would cover every case of bailment. But it is the necessity of reaching the facts by a discovery—having jurisdiction for such a purpose, the Court, to avoid multiplicity of suits, will proceed to administer the proper relief. Hence, says he, a Court of Equity, under the head of discovery, will entertain a suit for relief in the case of a single consignment to a factor for sale. [1 vol. Com on Eq. 444-5; see also Halstead v. Robb, 8 Porter's Rep. 63.]

In Russ v. Wilson, 22 Maine Rep. 207, the plaintiff set forth in his bill, that he had left with the defendant, an attorney at law, certain demands against different persons for collection, under an agreement that the defendant should apply the proceeds, when collected, to the payment of a note then held by the defendant against the plaintiff, and should account for the surplus, and avers that more than sufficient had been collected to pay the note, but that the defendant had failed to apply the same, or otherwise account for it: *Held*, that the plaintiff had a plain and adequate remedy at law, and his bill could not be entertained. And in Ashley's Adm'rs and Heirs v. Denton, 1 Litt. Rep. 86, the Court said, that the jurisdiction of Chancery, exercised upon the ground of a trust, ought to be confined to the controlling of legal rights vested and remaining in trustees, created as such in some legal manner, and not extended to all cases of abused confidence.

In the present case, the object of the bill is not to recover damages of the defendant for having converted the note which the plaintiff left in his hands to be collected, nor is it to recover upon an allegation that the defendant has received the amount, or a part of it, due thereon. If the bill had been framed upon either of these hypotheses, we should be inclined to think it could not be entertained; for then the remedy would be plain and unembarrassed at law. In the first case trover, and in the second assumpsit for money had and received, would lie.

But the plaintiff does not elect to consider the acts of the defendant as a conversion, so as to divest his property in the note, and put him to an action at law for his indemnity. He insists upon his right to it as still continuing, notwithstanding it has been sued in the defendant's name, and denies that he ever gave him a lien upon it, or authorised an appropriation of its proceeds to any amount. If the plaintiff never invested the defendant with any

interest in it, but merely deposited it with him to be placed in the hands of an attorney for collection, his right to it was not lost, by the form in which the suit was brought. This being the case he was certainly entitled to the fruit of the judgment, and should consequently be allowed to control it. This right, the defendant refused to concede, and we cannot very well conceive how the plaintiff could avail himself of it, unless equity should lend him its assistance.

In May, et al. v. Nabors, [6 Ala. Rep. 24,] it was alledged in the bill that N. left in the hands of P. a promissory note, made by S. and W., for collection; that P. afterwards transferred the same to M. for an equivalent paid him by the latter; M. brought a suit against the makers in the name of N., for his use, and recovered a judgment against them. Afterwards N. filed a bill setting out the facts, alledging P's insolvency and removal from the State, and praying that M. surrender to him all control over the judgment and the collection of the money; and that M., his attorney, &c., be restrained from collecting the same. The allegations of the bill were sustained by proof, and the chancellor adjudged that the complainant was entitled to the relief sought. This Court, on error, held, that as N. had never transferred his interest in the note, it was incumbent on M. to satisfy himself of P's right to dispose of it, and that P's agency did not authorise him to transfer it. The decree was consequently affirmed. [See also Kirk v. Glover, 5 Stew. & P. Rep. 340.]

In the case cited from 6 Ala. Rep. the question of jurisdiction does not seem to have been made, or considered by the Court. The allegation of P's insolvency could not have been regarded as essential; for if insolvency was necessary to confer jurisdiction, it should have been alledged that M. was in that predicament. As to him N. would not have been remediless at law; for if he had received the money due upon the judgment, it might have been recovered of him by an action for money had and received, if the transfer of the note by P. was unauthorized. The principle then, which influenced our judgment in May, et al. v. Nabors, applies with all force to the case at bar.

We agree with the chancellor, that the proof in the cause is so loose and unsatisfactory, that it is difficult to do exact justice between the parties. The witnesses are not, as to some of the facts they relate, sufficiently explicit as to time, &c., so that it can

not be known what was the extent of the complainant's liability to Henry Dunn, when he sold him the horses, &c., and how the price agreed to be paid for them was appropriated. It must however be remembered that the *onus* of establishing the indebtedness of the complainant to the defendant, Henry Dunn, devolves upon the latter. The bill is framed upon the hypothesis that the complainant never parted with his interest in the note, or in any manner pledged any part of its proceeds. This is not only denied by the answer of the principal defendant, but he sets up a contract between himself and the complainant, by which he was to be paid from the amount collected on the note what the latter was then indebted to him, and be allowed for subsequent advances for the complainant's family. So far as the answer seeks to charge the complainant, it is affirmative, irresponsive to the bill, and must be proved by the party alledging it.

It is perfectly clear that the defendant has failed to prove his entire demand. There is no legal proof of the justness of the medical account, which he insists he has paid ; nor is the fact of payment shown otherwise than by an assignment of the account, by the person in whose favor it is stated. The testimony that the physician kept just accounts, (although he was dead) was not evidence to establish its correctness. [Nolley v. Holmes, 3 Ala. Rep. 642.]

It is proved by one witness, that the defendant, Dunn, informed him when the note was sent to an attorney to put in suit, that the complainant was indebted to him but ninety dollars. Another witness testifies, that in the spring of 1842, (about the time the judgment at law was obtained,) he heard the same defendant say that his claim upon the note amounted to only two hundred dollars. These admissions of the defendant, taken in connection with the proof, forbid us to disturb the decree in the cause.

We will not consider whether the reference to the master was not prematurely made, and did not embrace at least one inquiry, that should have been made and considered by the Court. The reference seems to have been acquiesced in by both parties, and could not now be objected to as irregular, if either party was inclined to complain of it.

The objection that it does not appear that the complainant demanded the note, or the control of the judgment, is not well founded. It is clearly inferrable from the answer of Dunn, if not from

the testimony taken before the master, that the complainant had sought an adjustment, and that this defendant had refused to yield the right to the judgment, unless the complainant would extinguish the demand which the defendant set up against him.

The bill is not for a discovery merely, but it is for relief also, and should not have been dismissed, because its allegations were denied by the answer of the defendant Dunn. It is competent for the complainant to make out his case by evidence ; and the assumption that the *allegata and probata* do not correspond, can not be supported.

In respect to the question of costs, it sufficiently appears from what has been said, that the defendant was not free from fault, and we can not say that he has been improperly taxed with a part of the costs.

Our conclusion, from a view of the entire case, is, that the decree must be affirmed, with costs.