# DECISIONS

OF THE

# SUPREME COURT OF FLORIDA.

14  331
46  544

## OCTOBER TERM, 1873.

SAMUEL B. STEPHENS, ET AL., APPELLANTS, VS. RHODA E. GIBBES, APPELLEE.

1. Under the Statute of November 7, 1828, (Thomp. Dig., 184,) where express provision is made for the widow in the last Will and Testament of the late husband, she is required to dissent thereto within twelve months from the probate of the Will in order to an assignment of dower. At common law no time within which an election should be made was prescribed. The effect of this Statute is to fix the period during which she may elect. If that time expires, the provision made in the Will becomes obligatory upon her and her right of election is lost.

2. The loss of a large portion of the estate through the emancipation of the slaves four years after the provisions of the Will had been accepted, and the consequent insolvency of the estate, does not present a case in which, either before or since the Statute, a Court of Equity would set aside the election and award dower.

3. The Act of December 13, 1861, suspending the Statute of Limitations, did not have the effect to revive a right of election under the Statute of November 7, 1828, which had ceased to exist by expiration of the time therein limited for its exercise; nor is an election once made set aside and a right to elect again created by the provisions of Section 3, Article XV, of the Constitution of this State.

Appeal from the Third Judicial Circuit, Madison County.

This is a suit in chancery, instituted by Mrs. Rhoda E. Kilcrease, (now Gibbs,) against Samuel B. Stephens and Samuel B. Love, surviving executors of the last will and

testament of Wm. E. Kilcrease and Albert Kilcrease, a child of William E. Kilcrease. While the suit was pending, and after answer filed, these executors being removed and E. S. Shepard being appointed administrator *de bonis non* with the will annexed, he was made a party.

The suit is to recover dower in the lands, tenements, &c., of her husband. The will, which is dated January 7, 1860, directs the executors "to keep the planting interest up for the space of seven years for the purpose of paying the just debts of the testator." After the payment of debts, the testator directs the whole estate to be divided between his wife and children, share and share alike. In the event of any of the children dying without issue, then it is directed that the portion of those dying shall go to the survivors, and in the event all should die without issue, then the share going to them should be divided into two equal portions, one to go to his wife, the other to his brothers. Under a codicil the testator directed his executors, immediately at his death, to deliver to his wife a number of negroes, together with all the household and kitchen furniture, and two carriages and horses belonging thereto, in addition to the provision made for her in the will. In this property she was to have an estate in fee.

Samuel B. Stephens, Samuel B. Love, R. A. Waller and Daniel F. Gilchrist were named executors. William E. Kilcrease died on the 8th of May, A. D. 1860. On the 14th of May, A. D. 1860, the will was admitted to probate in the probate court of Gadsden county, and Stephens, Love and Walker qualified as executors. Walker died before the institution of the suit, and during his life had but little to do with the estate. Plaintiff through her bill alleges that testator at his death was possessed of a large estate; that his real estate consisted of three valuable plantations in Gadsden county, one in Calhoun, and large bodies of unimproved land lying in Gadsden, Wakulla and Liberty counties, amounting in the aggregate to many thousand acres, also a

house and lot in the town of Quincy, and several other parcels and lots of land; that the personal property consisted of 177 slaves, appraised at $135,550; other personal property appraised at $16,240; of good notes $21,920; of doubtful notes $6,000, and of other moneys and choses in action. That the executors, during the time they were in possession of the property, became possessed of a large amount of personal property through the cultivation of crops, from rents and issues of the property, embracing 353 bales of short staple cotton, 450 of long staple, 28,000 lbs of tobacco, 45,-500 bushels of corn, 50,000 bushels of oats, 2,000 bushels of sweet potatoes, 300 bushels of rice, 200 bushels of peas, 100 bbls of syrup, 30,000 lbs. of pork, 75 head of beef cattle, and other articles, which plaintiff was unable to specify.

That the assets aforesaid prudently administered would have been sufficient to have discharged all of the debts of the estate, leaving an ample support for herself and children. That she is informed that there is still a very large indebtedness still remaining unpaid; that it is doubtful whether the assets, including the lands, at present prices, are sufficient to pay the debts; that the creditors seeking to recover their debts have been restrained by an injunction, issuing from the court of chancery, at the suit of the executors, "upon a showing in their bill to the effect that on account of the emancipation of the slaves, and other grounds stated therein," the estate would be reduced to insolvency; that the executors have been authorised by decree to sell and dispose of the remainder of the estate for the purpose of paying the demands of the creditors, and that if such decree is executed, plaintiff will be deprived of all benefit in the estate. That she has never accepted of the provisions of the will, and that the only money that she has received from the said executors was $600 in legal tender notes of the United States, and some Confederate notes, the amount of which she does not recollect. That having implicit confidence in the executors, she signed and sealed such papers as they

presented to her without a knowledge on her part of the contents and without being informed by them of their purport and effect, and that, if any paper is in existence by which she is deprived of any right of dower which she might have possessed, or of any acknowledgement by her of her assent to the provisions made for her "*in the body of the said will*," such papers were executed by her without any such intention or knowledge of their effect; that a short time after the death of her husband and while she was in great grief, one of said executors brought her a paper to sign, which she did but the contents of which she did not then know, but has since been informed that it was a receipt for the specific legacies given to her in the codicil to the said will. Plaintiff then alleges that she is dissatisfied with the will, that she dissents to it and that she claims and elects to take her dower in lieu of what is devised to her under the will; that the receipt for the legacy under the codocil was signed a short time after the death of her husband, while she was in great grief, before she knew anything of the condition of the estate, denies that she had any intention thereby of waiving any legal right of dower which she had, and claims a present right of election, and also insists that if she has made an election, its circumstances are such as that it should be set aside, and she be restored to her right of dower.

Love and Stephens, the executors, in their answer admit the execution of the will, the death of the testator, the probate of the will and their qualification as executors as stated. They allege that under the provisions of the will a " handsome " provision was made for plaintiff, it being one-third, or a child's part; that under the codicil there was still a further bequest amounting in value to over $12,000; that in conformity to the request of the testator, this property was delivered to the widow immediately after the death of her husband, and that she accepted the same; that the will was admitted to probate on the 14th of May, 1860, and

Stephens et al. v. Gibbes.

that plaintiff has never expressed her dissent to the provisions of said will, as required by the statute, and not until the filing of her complaint in this action on the 3d of Feb'y, A. D. 1869; that said codicil was added at the plaintiff's own solicitation, the slaves therein mentioned were selected by herself, and she expressed herself fully satisfied with the provisions for her in said will and codicil; that this property was delivered to her and the receipt taken for it. They deny having practised any fraud, aver on the contrary that the receipt was taken by the brother of the plaintiff, who was one of the executors then residing with the plaintiff; they affirm that not only was the very valuable property bequeathed to her under the codicil accepted by her, but that they had frequent conversations with her in regard to her ultimate share of the property upon final settlement, and that such conversations occurred long after the time for filing her dissent to the will had expired. That believing that her election to take under the will had settled these questions, they proceeded to discharge the trusts of the will. That they settled the indebtedness of the estate to the amount of $180,000, and continued to make such settlement during the war; that upon the close of the war, through the emancipation of the slaves and the depreciation of the value of the real estate, the estate becoming insolvent, they filed their bill in chancery, setting forth these facts and praying a decree directing a *pro rata* payment of the creditors.

After the filing of the answer, the defendants, Stephen and Love, were removed as executors, and E. S. Shepard being appointed administrator *de bonis non*, with the will annexed, was made a party to the suit.

The amended complaint and answer attending these proceedings we deem it unnecessary to refer to, as they do not change the case made by the original bill and answer.

*Evidence for Plaintiff.*

The only exhibit in the case is the last will and testament. Its provisions, so far as they affect the case, have already been stated.

Testimony of Mrs. Gibbs (late Kilcrease,) the plaintiff:

She states that after the death of her husband, the executors informed her that she would not receive anything from the estate except the special legacy; that if she took from her father's estate a note of General Kilcrease for $6,000 due that estate, then she could receive payments on that account; that she took the note and received several payments on it during the war in Confederate money, and also $600 in greenbacks after the war in 1865. That she received nothing whatever from the estate except on account of said note with the exception of some supplies, which she was in the habit of sending to the plantation for, being informed that the executors got similar supplies; that most of the servants derived from the special legacy were her own individual property, given to her by her father; that she received nothing for the support or education of her son; that had she not received assistance from her mother and brother, she would have been in a destitute condition; that during the war she had frequent conversations with S. B. Love, one of the executors, but made no special inquiry into the affairs of the estate as she had at that time implicit confidence in the executor as a trusted friend of her late husband, and was only undeceived in 1865, when she was informed that she must leave the house which she had occupied, as she paid no rent for it. That up to that time she was entirely unaware and ignorant of her rights in regard to dower, never having been told of them, and being without any legal knowledge or information; that as soon as she was informed of her rights and of her being left in a most destitute condition, she immediately took steps to assert her rights; that as soon as she

did this, the executors sued her for $8,000 ; that her action was first brought in the U. S. Courts.

Plaintiff placed in evidence her receipts to the executors for the sum of $7,327.86, extending from May 22, 1862, to August 19, 1865, some of the receipts being on general account, others for moneys received on plaintiff's claim under the note she held against the estate, also her receipt for the property she received under the codicil.

### Evidence for Defendants.

The will and codicil, and the receipt for the special legacy, all of which have been stated.

S. B. Love, one of the executors, and the only witness examined for the defendants, testified that he was present when the will was made and executed ; that a short time after it was executed the testator asked him to recall Mr. Stephens, who had written the will ; that after a short conference between them, Mr. Stephens drew up the codicil and Mrs. Kilcrease was called into the room and it was read to her, and she expressed herself upon inquiry from her husband to be entirely satisfied. He states that Mrs. Kilcrease was present when the will was made, and that she subsequently received and receipted for the special bequest, without expressing any dissatisfaction with the will ; that the estate was entirely solvent and was considered very valuable ; that he had the principal management and control of the property during the war. That during all of this time, Mrs. Kilcrease was permitted to occupy a dwelling-house of the estate free of rent, and drew all her supplies from the plantation, it being the purpose of the executors to arrange the matter of charge upon the final settlement of the estate ; that during this time plaintiff frequently conferred with witness about the success of the planting interest, the prospect of the estate paying out of debt without a sale of property, and the probable distributive share, and that plaintiff never expressed any dissatisfaction with the will until in the year 1866, about

six years after the death of the testator. The plaintiff was fully advised by him as to the condition of the estate; that the estate was always deemed solvent, and it was supposed that there would be a large amount for distribution, until the emancipation of the negroes and the decrease in value of real estate.

Upon the hearing of a motion for a reference, judgment allowing dower and appointing a referee, with general powers looking to its assignment, was made.

Upon exceptions to this order of reference and judgment, this appeal is now prosecuted.

The general question presented is: Is the widow, under this state of facts, and at this time, entitled to dower in the estate?

*Stephens & Love* and *McGill* for Appellants.

The question now at issue between the parties is whether the plaintiff, under the circumstances, is entitled to dower in the estate of her late husband, it appearing from the record that said deceased died testate and that the plaintiff neglected to dissent from the will so left within twelve months from the date of letters testamentary.

The defendants hold that the plaintiff is barred of dower; not alone by the statute of the State, which supercedes the common law and governs and controls in all cases for application for dower, but by the common law also, admitting that to be in force; and as the plaintiff insisted upon her rights in the court below under the common law, and the court there predicated its decision principally upon the common law, we will first examine this law as settled by modern decisions. And that we may be the better able to apply the principles of the common law to the case under consideration, we will keep in view the important distinctions as to the nature and character of the estate or property in which a widow is dowable in this State and at common law.

At common law the widow was entitled to dower only in the real estate. Adam's Eq., 51; Bacon's Abr., 191; 1 Bright, H. and Wife, 321. In this State she is entitled to dower both in the real and personal property. Thompson's Digest, 185. In order to put the widow to her election or deprive her of dower at common law, it must appear that the testator meant to exclude her from it, as where there is an inconsistency between her claim to dower and the disposition to her by will. 3 Ves. 249; 2 Rop. on Leg., 414. It is apparent in this case that it was the intention of the testator to exclude the widow from dower.

By reference to the will and codicil we find that a large special legacy is left the widow of property out of which she would be dowable, and the executors required to perform acts entirely inconsistent with her claim of dower.

It cannot be presumed that the testator intended to give his widow a special legacy of the value of $12,000, and an equal portion of the balance of his estate with his children, in addition to her dower, or one-third of the gross amount of his estate. In all the leading cases at common law, where it was apparent that the testator did not intend the bequest in addition to dower, the widow was put to her election. 2 Ves. & Bea., 222; 2 Rop. on Leg., 424; Sim. & Stew., 513; 2 Rop. on Leg., 424, 425; 4 Mad. 125; 5 Mad. 45, 62; 2 Will. Ext'rs, 124 and 1,241. The principles governing all the cases adjudicated by the common law judges are fixed and well determined. The only difficulty consisted in ascertaining the intention of the testator. Amb. 732.

The true way of ascertaining the intention of the testator is to look into the will and see whether it is plain that he could not have given what he had, consistently with the widow's claim to dower. 2 Ves. Jr., 572. In this case we find the widow generously provided for, the intention of the testator to exclude her from dower unmistakable. Having seen that this case is one that under the common law would put the widow to her election, let us now see whether under

the principles as settled she has not made her election to take under the will. The acts and circumstances that have been deemed an election under the common law are various, and each case depends to a great extent upon its own particular circumstances. 2 Story Eq., 1,097. A receipt of an interest or legacy under a will devising away real estate and property to which the widow would be entitled as dower, is an election. 2 Rop. on Leg., 427. In this case the widow received and enjoyed the special legacy under the will since May, 1860. It is a principle of equity that a person who accepts a benefit under an instrument must adopt the whole, giving full effect to its provisions and renouncing every right inconsistent with it. 1 Ves. Jr., 172, note $a$, and cases there cited; 1 Leading Cases Eq., 289; 7 Cranch, 378. The widow in this case did accept a large benefit under the will of her late husband, to-wit: $12,000. In addition to which she has acquiesced in the provisions of the will for a long space of time, to-wit: from May, 1860, to the filing of her bill, a period of more than seven years. Thus we see that at common law, the plaintiff would not only have been put to her election, but from her acts and long acquiescence would be deemed as having made her election to abide the will. It cannot be said that the election was made in ignorance or under misconception of facts, for the evidence is that it was her own brother, one of the executors, to whom she handed the receipt for the special legacy. That another of the executors had frequent conversations with her on the subject of the status of the estate, and that she was by him fully informed, and that she never at any time before the close of the late war expressed any dissatisfaction with the provision made for her. But if she had not been thus informed, she could have compelled a discovery to enable her to make a discriminating and deliberate choice. 2 Story Eq., 1,098. In the absence of proof that plaintiff was in ignorance of the true status of the estate, that any important fact was concealed from her by the executors, or that she took any step

to gain the necessary information, she must be presumed to have made her election with a full knowledge of the facts and circumstances relative to the estate.

We now come to examine the plaintiff's claim to dower under the statute as it is. This and not the common law must govern in this case. Upon examination we find that all the uncertainties and indefiniteness of the common law as to the intention of the testator, the force and effect of the will, the rights and privileges of the widow, disappear in the light of the statute, and the question as to whether the widow shall be put to her election, the time when it must be done, the mode and manner of doing it, the effect and consequences of making or of neglecting to make it at the proper time, are all pointed out and definitely fixed by the statute of the State.   Thomp. Dig., 184.

The first section of the act tells when a widow is entitled to dower. The first and second inclusive tell us in what property she is dowable and the quantity and estate she takes. When any person shall die intestate, the widow shall be entitled to dower as a matter of course.

If any person shall die testate and not in his will make any *express provision* for his wife, or such as shall be satisfactory to her, such widow may signify her dissent thereto in the Circuit or Probate Courts of the county where she resides at any time within one year after the probate of such will, and then and in that case she shall be entitled to dower.

According to this statute, if there be a will, no matter what its character may be as it relates to the widow, she takes dower, if at all, upon conditions precedent.

In all cases where there is a will, the widow is bound by it unless she expressly dissents thereto within the time limited by the act.  After the expiration of twelve months, she is presumed to have acquiesced in the provision made for

2

her, and the estate then vests according to the provisions of the will.

In this State the will is presumed to disclose the intention of the testator in regard to his widow as well as to all others, and she is presumed to acquiesce in that intention, whether it be generous or parsimonious, unless she dissent thereto within the time and in the manner prescribed by the statute.

At common law, the widow was entitled to take dower only in the real estate. It therefore often happens where a testator made to her a bequest of personalty in which she was not dowable, and did not signify by word or clear implication that such bequest was to be in lieu of dower, it was presumed he meant the bequest in addition to dower. Under our statute no such presumption can arise. The widow being dowable in all the property, real and personal, and in no case can the widow take under the will and also take dower, unless it is expressly provided in the will that the bequest is to be in addition to dower. The order of things as they existed under the common law is by our statute reversed.

At common law it must be expressed or clearly implied in the will that it was the intention of the testator to exclude the widow from dower. Under our statute it must clearly and unmistakably appear that it was his intention to permit her to take dower in addition to the bequest. At common law there was no time limited in which a widow was required to make her election—no particular mode or manner prescribed in which she was to make it. Under our statute it is different, and the difficulties and uncertainties heretofore presenting themselves under the common law are avoided. She may not accept any benefit under the will, or do any act that can be construed as accepting or electing, yet if she neglect or fail to dissent to the will within the time and in the manner prescribed by the statute, she is presumed to have acquiesced and is barred of dower. The 3d

section of the act, Thomp. Dig., 185, is to be taken and construed in connection with the 1st and 2d sections.

In case the husband dies intestate, the widow may elect between dower and child's part within one year from date of letters of administration.

In case he dies testate, the widow must first dissent from the will and then elect between dower and child's part, but she must be entitled to dower before she can elect between that and a child's part.

It is contended by plaintiff that under the 3d section of the 15th article of the Constitution, the right of the widow to elect to take dower is revived. All the authorities, and they are numerous, are opposed to such a proposition. Claims against an estate once barred are cut off entirely; no legislative enactments can reinstate or revive a dead claim. 13 Fla., 416; 1 How. Miss., 183. After the lapse of twelve months from the date of the probate of the will, the entire estate vested in accordance with its provisions and became subject to the payment of debts, legacies, etc., in the hands of the executors.

Held by the court below that the statute of December 13, 1861, suspended the statute of limitations then in force in relation to civil actions; that this was a civil action and that consequently the act, Thomp. Dig., 184, limiting the widow to one year in which to dissent from the will, was suspended.

This is erroneous, 1st. Because the act of 1828 giving the widow the privilege of dissenting to the will of her deceased husband within twelve months, although it limits her privilege, and is to that extent in the nature of a statute of limitations, yet it is not what is technically known as the statute of limitations, which limits the commencement of civil actions.

It is more in the nature of a statute of non-claim and was not suspended or referred to by the statute of December 13, 1861. 13 Fla., 416.

2. Because the time in which she was required by statute to make her dissent expired anterior to the passage of the act of December 13, 1861. Her privilege to dissent from the will and elect to take dower, was therefore barred before tho passage of the act.

The policy of the act limiting the widow to twelve months in which to make her election, is evident when we consider the embarrassment and delay which would otherwise arise in the due and proper administration of the estate.

This policy has been adopted by most of the States by statutory provisions.

In North Carolina and Tennessee, any provision by will bars the widow of dower unless within a certain time she dissents from the will. 2 Devereux Eq., 338, 372; Meigs' R., 378; 6 Humph., 220.

In Massachusetts, Ohio and Alabama, the widow must dissent within six months after probate or she is bound by the will. 12 Pick., 146; 10 Ala., 997; 14 Ohio, 610, 646. Similar statutes are enacted in New Jersey, Delaware, Pennsylvania and New York. In Mississippi the widow may renounce her rights under the will and insist on dower within six months after probate of will, but if she permit six months to elapse by one day, she will be confined to the will. 7 How. Miss., 665.

In this case the assent of the widow is not only implied by her failing to dissent in the period prescribed, but her actual and positive assent is proven by her acceptance of the legacy and receipting for the same, and her dissatisfaction with its provisions is not based upon facts existing at the time of her election, but which subsequently arose, and after she had been for years in the possession and quiet enjoyment of her legacy. Nor has she been deprived of any portion of it by defect of title, or other cause, existing at the time of her election.

*M. D. Papy* (with whom was *J. W. Malone,*) for Appellee.

The receipt given by Mrs. Kilcrease, now Mrs. Gibbes, for the property mentioned in the codicil, can have no effect to bar her dower and furnishes no evidence of an election under the will, for the important reason that this receipt was given shortly after the death of her husband, before by many months the time elapsed within which the law authorized her to dissent from the will. Another reason is that she did not so intend it, but only acted as requested by the executors to give them a voucher against property already in her possession. Another reason—because the property or the most of it was already her own, and she had no idea that in giving the receipt she was affecting her right one way or the other, either under the will or under the law.

Besides, the property bequeathed by the codicil was not given either in lieu of dower or of some other provision made by the will.

The proofs do not disclose any other receipt by her, other than for payments made to her as a creditor holding the note which she derived from her father's estate.

We are brought to consider the effect upon her rights by her failure affirmatively to dissent from the will within twelve months from its probate, and whether, under the circumstances of this case, she is barred of all dower in her husband's estate. If, as we have attempted to show, the receipt for the codicil property should have no weight, because not given with any intent that it should be taken as an election, and because also it was given long before the time expired for her to signify her dissent, we are reduced to the single question whether her not making a dissent in this case within twelve months shall deprive her of all right whatsoever.

The claim of a dowress is the most favored in law. This has long been recognized, for we find that the master of the

rolls, Sir Thomas Trevor, said on one occasion that "the right that a dowress has to her dower is not only a legal right and so adjudged in law, but it is also a moral right to be provided for and have a maintenance and sustenance out of her husband's estate to live upon. She is, therefore, in the care of the law and a favorite of the law. And upon this moral right is the law of England founded as to the claim of dower." 1 Story's Eq., ·629, *et seq.* So highly is she favored by the law, that her claim is preferred to all others, and no act of her husband can defeat it. By the common law she could not be deprived of her dower except by a legal jointure, and she could part with her right only by her voluntary act in suffering a recovery, of which our separate examination is the equivalent. In this country, in some States, and perhaps in all, equitable jointures are recognized in substitution of dower, but it must be the equivalent in value to deprive her of her legal right.

In this State, however, there can be no provision by way of jointure or otherwise created by will, or by deed during coverture, that can deprive the wife of her legal right, except by her voluntary assent. In considering this subject, the question naturally arises whether it could have been possibly in the contemplation of the framers of the law that the wife in any contingency was to be deprived of all right whatsoever, by the mere silent operation of the law, as would be the case here. We but anticipate the answer, when we assert that it could not so have been, and further, we maintain that the statute never could have intended to lessen the widow's right. The renunciation of or dissent from the will creates no new right; it would rather strengthen the pre-existing legal right of dower. But inasmuch as she is allowed to accept the provision of the will intended to be in lieu of dower, she is required to signify her dissent within twelve months. This alternative is clearly intended for her benefit, and could not have been granted upon the supposition that unless she did dissent, whether she was

aware of the condition of the estate or not, she should be put to the hazard of getting nothing at all from the estate. Our statute creates no forfeiture of the legal right on failure to dissent within twelve months, but goes on to prescribe where dissent is made, how and in what manner she shall be endowed.

This statute, let it be recollected, does not create the right to dower; that existed before and at common law. The law concerning deeds recognizes it, for it provides how it shall be relinquished and is very careful to guard her rights. The statute of wills also recognizes it, and only inferentially affects it by the terms employed concerning the dissent to be made to the will. It is worthy of remark also, that this provision is coupled with the declaration as to the manner of endowment in case of an intestacy, which shows that the manner and extent of the endowment, and not the right itself, was in contemplation. It surely could not have been designed that if a husband, disposing of all his property by will, should make no provision at all for his wife, she should still be required to dissent from the will, in order to entitle her to dower. We are aided in our construction on this point by the light of judicial authority, for in Cumming's executors vs. Daniel and wife, 16 B. Monroe, 470, it was said that a widow, whose husband had devised away his whole estate without making any provision whatever for her, may, without renunciation, there being nothing to renounce, claim and recover the portion of his property to which she would be entitled in case of intestacy. The widow, having a right to elect in a proper case, the failure to dissent was, I suppose, to be assumed as an election to take under the will, but this assumption or presumption may be explained like all others, or may be controlled by the court at her instance, as the rights and interest of the dowress may require in furtherance of the obvious purpose and spirit of the law in her behalf. It is manifest that a benefit was intended to the widow, and where this fails, not as the result of her own act,

all the authorities show she is remitted to her dower. In the case of Snelgrove vs. Snelgrove, 4 Dessau., 300, the court manifested the usual care in preserving widow's rights.— The court said in executors of Munroe vs. Roger that it "was by no means inclined to deprive a woman of her legal rights, under the idea of her having made her election merely by a bare acquiéscence. But it should be made to appear that she was perfectly conusant of her legal rights, and that she had done clear positive acts indicating her having made her election." In the case of Gist vs. Heirs of Cattell, 2 Dessau., 53, we find in the head note, which is intended to embody the substance decided in the case, and in which, however, the opinion is meagre, the following:

"A person waiving a claim on the ground of a supposed benefit, may revive it on failure of that benefit. So a widow taking a legacy and waiving dower may again set up her claim to dower if the debts take away the legacy."

The rights of the dowress require that upon a positive election to take the will made by mistake as to the condition of the estate, she shall be remitted to her dower, for otherwise what was intended for her benefit would become an instrument of positive and palpable wrong. It is in this view that the doctrine in the citation from DeSaussure was announced. This doctrine is in perfect harmony with the equitable principles which courts of chancery have long established for the protection of married women.

Even as early as the days of Henry the VIII, the principle was incorporated in the statutes of England, for in the statutes of Henry the VIII on the subject of dower and jointure, (I believe it is the statute of uses,) provision is made to indemnify the wife on being evicted of her jointure or any part thereof; and to the same end has legislation been directed in this country, where there has been any legislation on the subject, as in Kentucky. The cases have gone so far, (said the Chancellor in Hall vs. Hall, 2 McCord, 269, 280,) that after the wife has made her election and has re-

ceived benefits under the will, she has been allowed to retract and resort to her legal rights, when the estate has turned out differently from what it was believed and stated to be at the time of the election prematurely made.

The result in this case would be to exclude the widow entirely from any benefit in her husband's estate. Before there was any payment or assignment of property to her, the circumstances of the estate became changed by the entire destruction of its slave property. The remaining property, consisting mostly of land, is insufficient to pay the debts of the estate. The creditors claim that they are entitled in preference to the widow, who should be confined to the will, and therefore having, as they claim, such preference, they will absorb everything to themselves.

The proposition is that the widow is to be confined to the will in order that she may *get nothing*, and in this manner it is proposed to dispose of a claim of the *highest legal and moral status*. The "*moral right* to be provided for, and have a maintenance out of her husband's estate," and which places her "*in the care of the law*," is by a provision intended to secure it more amply and certainly to be made utterly worthless.

If the court shall be of opinion that under the circumstances in this case the widow is not remitted to her dower, still we insist that it will not be equitable to require that the consequences following the emancipation of the slaves shall fall entirely upon her, but that they should be distributed so that the creditors and the widow shall bear the same relation to the remnant of the estate as they bore to the original corpus of the property.

If the original estate was equal to the entire payment of the debts, and in addition thereto, also to a provision adequate for the support of the widow, approximating the portion she might have taken as dower, then it would result, from the position we take, that what remains of the estate should be divided between the widow and creditors in the

same ratio, and thus would be preserved a just equity between them. If the estate at the death was solvent, and the widow, under the will, would have taken nothing, because of there being nothing for her after the payment of the debts, then it is admitted, and the authorities show it, that she could fall back on her dower. This should not lessen but ought rather to strengthen the reason why, in the case at bar, the widow should have the benefit of a principle of equity which would distribute the loss so that neither should be the entire sufferers, but both should receive the relative benefit intended by the will, and which would have followed but for the loss of property. This principle, it is admitted, is not of general application, but in the case of a widow, who is the special object of care and a favorite of the law, there exist rules for her benefit which apply in favor of no one else.

The " equitable doctrines which Courts of Chancery have long since established for the protection of married women," and their enforcement by the courts, show that she is distinguishable from all others, *when her rights growing out of her marriage relations are concerned..*

If a court will, notwithstanding a *positive affirmative election*, allow a widow to fall back on her dower because the circumstances were not known at the time of her election, and which when developed showed that she ought not to be bound, it is respectfully urged that the like " equitable doctrine " should entitle a widow, when matters *ex post facto* sweep away a part of the estate *which would have gone to pay the debts*, and also part which would have gone to her under the will, to ask a court to preserve her relative right to the remainder and not transfer the loss from the creditor to herself. In this case it is respectfully insisted that such a principle is of peculiar application, because here the creditors waited from 1860 until after the close of the war. They were entitled to urge payment of their debts at any time, and they were entitled to be paid out of the slave property

and personal estate before resorting to the land. They did not urge payment of their claims. The widow, *under the will*, was bound by its terms and could not do it. The creditors, who *could have urged payment*, stood by with all the hazards against the widow (in their view of the law,) and when the slave property passed away, seek to transfer their claims against what remains, and by this means to exclude the widow from all benefit, either under the will or under the law. *This is not equity.* But it is equity that each shall bear a just proportion of the resulting loss, because neither before had enjoyed or became possessed of the benefit of their rights, and because *as dowress* the widow's right is paramount and preferred, and as widow, under the will, equally favored. The authorities show that if the debts sweep away the legacy given to a widow in lieu of dower, she is entitled to fall back on her dower, because otherwise she would get nothing. This rule grew out of the favorable doctrines adopted for the protection of married women. Now, suppose as in this case, the legacy, or rather a part of it, as well as part of the property applicable to debts, is swept away by the action of the Government or the results of the war, does it change the effect upon the *rights* of creditors to hold that they shall be required to maintain with the widow the same relation to the remainder of the property any more than in the other case, where she is remitted to her dower? In the one case, where the debts would take it all, this effect is prevented by allowing her to fall back on her dower. For example : the estate being $200 and the debts $200. If the widow takes the will, she would in such case get nothing, and the $200 of debts would be fully paid by the $200 of assets. But the widow in such case is remitted to her dower, and it would then follow that she would take the one-third of $200, which is $66.66, and there would be left $133.33 to be applied to the debts. So in the present case, if the principle we urge prevails, the creditors would get the estate less the amount which would be apportionable to the widow, if the

estate is distributed equitably between them.  Whereas, if it is rejected, the widow gets nothing and the creditor takes it all.

It would follow that in the one case, from an *established equitable principle in favor of the married woman*, she would be permitted to take dower, because to confine her to the will would be unjust to her, and yet in the other, where her claims *upon the court* are identically the same, she would not be permitted to be kept in the same relation with creditors to the remnant of the estate which she bore to the entire property.  It is submitted that the equitable principle in favor of married women requires that under all circumstances the courts should preserve her rights, where in doing so they do not infringe upon any other known principle of law, and that the entire loss should not fall upon her, but should be distributed equitably between herself and the creditors.

WESTCOTT, J., delivered the opinion of the Court.

The methods of assignment and admeasurement of dower, the means by which it was barred, and the remedies for its recovery, as they existed in England at the time of the establishment of the independence of the American Colonies, like the rules of descent, law of primogeniture, and system of entails, were inconsistent with the views of the fathers of the Republic upon these subjects, and but poorly adapted to the wants and requirements of the new society.  As there was no place for entails and the law of primogeniture, in a community where a general distribution of property was desired rather than its concentration in the hands of an aristocratic class, so in a community where it was desirable that the wife might speedily come into the possession of her dower interests, and the estate be settled, there was no place for the recovery of possession through the tedious process of an assignment under a writ of dower *unde nihil habet*, and a

Stephens et al. v. Gibbes.

subsequent tedious action of ejectment to recover pos_session.

Not only was the method of assigning dower, and obtaining possession of the estate so assigned, secured by a more speedy process under these statutes, but other statutes regulating the matter of election between dower and testamentary bequests and devises, both as to the circumstances under which an election was required to be made and the time in which it was to be made, were adopted. These changes, affecting the estate of dower in its various aspects, were cotemporary in many of the earlier States with the more elementary changes in the matter of descents, and they constitute but parts of a new system, each several part being so conceived as to make a consistent whole.

At the common law no time was fixed within which an election was to be made. Hence, the determination of this question depended very little upon the space of time which had elapsed after the death of the testator. There was really little safety in winding up an estate. Parties having beneficial interests under the will were delayed, and even when they did get possession the tenure by which it was held was very uncertain, as it might at any time be brought in conflict with a claim for dower, a claim which was paramount to the will, to their claims, to the claims of creditors, which would prevail even against the alienee of the heir, and as to which there was no controlling statute of limitations as in ordinary civil actions. Indeed, so highly favored was the estate of dower at the common law, that it occasioned Lord Bacon's remark that " it was a common by-word in the law that it favored three things—life, liberty, and dower." The statute in this State, which changed the rule of election, is as follows :

" When any person shall die intestate, or shall make his last will and testament, and not therein make any express provision for his wife, by giving and devising unto her such part or parcel of real and personal estate as shall be fully.

satisfactory to her, such widow may signify her dissent there-to in the Circuit or Probate Courts of the county wherein she resides (and if there be no court in the county, then to either of said courts in the next adjoining county,) at any time within one year after the probate of such will, and then, and in that case, she shall be entitled to dower in the following manner, to-wit," &c.

Following this section is another, which defines what shall be the interest of the widow in the personalty in testate estates where she dissents, as well as in intestate estates, but its insertion is not material.

This statute may be divided into two parts : First, It defines the extent and nature of the estate of dower, whether the husband dies testate or intestate. Second. In case the husband died testate, and makes express provision for his wife in his will, it fixes a time within which she must dissent thereto, and assert her claim to dower.

While we do not express an opinion as to whether any the most minute provision in a will for the wife would be within the meaning and intent of the statute, yet there can be no question in this case that the " provision " is of such character as brings it within the statute. The will directs that the planting interest shall be kept up for seven years for the purpose of paying the debts of the testator, and after payment of debts it directs the whole estate to be divided between the wife and two children, share and share alike.

Independent of the statute, the widow in such a case as this would have been put to an election whether she would accept the provisions of the will or take dower, because the claim of dower is here inconsistent with the will. 6 Ala., 24 ; 2 V. & B., 222; 2 Rop. on Leg., 414.

The will was admitted to probate on the 14th of May, A. D. 1860, and the widow signified her dissent to its provisions by filing a bill in the Circuit Court of Gadsden county on the 3d day of February, A. D. 1869. Instead of signifying her dissent, therefore, *within one year*, as required

by the statute, she failed to do so until after *nearly nine years* had elapsed. Is she compelled to abide by the provisions of the will through this failure? We cannot better answer this question than by using the language of the Supreme Court of Alabama, where this question arose under a section of their statute precisely similar to the one now under consideration. That court says : " The evil intended to be obviated was the difficulty which previously existed of ascertaining when and how an election was to be made by the widow. According to the course of equity law, the widow was entitled to an account before she was compelled to elect, and a suit in equity was frequently necessary to compel an election. This seems to be the only change made by the statute in the existing law—a fixed and definite term was introduced within which she is compelled to signify her dissent to the will, and if this is not made, it then, if any provision is made inconsistent with her right under the statute, becomes obligatory upon her." 6 Ala., 243. This decision was subsequently commented upon and affirmed in two other cases. 10 Ala., 991 ; 30 Ala., 331.

This statute of Alabama, passed in 1812, was evidently derived from a statute of North Carolina passed in 1784, and the decisions of the courts of North Carolina upon their statute are upon this question precisely in point. The statute of North Carolina, instead of the words " real *and* personal estate " in our statute, used the words " real *or* personal estate." This statute was considered by the Supreme Court of North Carolina in the case of Craven vs. Craven, 2 Dev. Eq., 338. In that case Mr. Justice Gaston, speaking for the court, says : " The Legislature by the act of 1784 substitutes a new rule more absolute and universal than that recognized at common law ; they made every case of a testamentary disposition by a husband in favor of his wife a case of election, whether the intent that she should take it in lieu of her dower was expressed or not expressed, and whether it could be implied or could not be implied from the structure

and language of the will, and to remove all dispute as to the fact of her election, they declared her to have elected to take under the will unless her refusal so to take was manifested within a prescribed time by a solemn dissent in open court. Unless she dissented, the will regulated the extent of her claims upon the estate of her husband, and if she dissented the law prescribed what should be their extent.

"Justice and the repose of the community require that it should be ascertained as speedily as convenience will permit whether the lands of a deceased man in the hands of his heirs and devisees are or are not subject to dower. The law has defined the time and prescribed the mode when and how this fact can be certainly known. The most obvious considerations of public policy forbid, without the clearest warrant, judicial expositions which will have a tendency to defeat this great purpose of the law." (See also 1 Dev. & Bat. Law Rep., 254; 2 Dev. Eq., 372, 539.) Decisions in Virginia, Kentucky, Massachusetts, Maine and New York announce like principles and rules in the construction of their statutes, but we deem it unnecessary to do more than refer to them in this connection. 4 Kent. Com. 59; 5 Call, 481, 351; 6 Leigh, 36: 4 Leigh, 152; 6 id., 461; 2 Dana, 341; 1 Dana, 203; 12 Pick., 150; 10 Pick., 507; 1 Met., 57, 73; 32 Maine, 132; 5 Paige, 446; 35 Barb., 483; 11 Ohio State, 389.

This period of time having elapsed in this case without dissent filed, and there being such provisions in the will as bring it within the statute, the inchoate right of dower ceased to have any existence and the provisions of the will become obligatory. Neither the executors, the other devisees or legatees, nor the creditors, are in any legal sense under an obligation to give the widow notice of the provisions of the will. The law presumes her knowledge of the will and its contents as well as her knowledge of her right of dower and its nature, and she is bound to know that if she omits for the space of one year to signify her dissent, she cannot claim dower.

The statute gives to the widow this time to inform herself of all the circumstances necessary to the exercise of a judicious and discriminating judgment, and if she neglects thus to do, she cannot be relieved of its consequences, unless her case is brought within that class of cases where a Court of Equity extends its corrective influence on account of fraud, imposition, misrepresentation, or mistake. Recollecting the early enactment of this statute, and that it was but part of a system introducing very elementary and material changes in the nature and extent of other estates at common law, as well as dower, and that it is a remedial statute, we do not well see how this conclusion can be avoided. All of these statutes are remedial in their character. Their enactment originated in the desire and necessity for curing the evils incident to the common law rules upon these subjects and their want of perfect adaptability to the changed civilization and government of the American States. This being such a statute, we must so construe it as to correct the mischiefs which it was enacted to remove.

What were the mischiefs which existed at common law, and at which this statute was aimed? These mischiefs are apparent from the changes made by the statute. These changes were two in number. The first change is in the fundamental rule controlling in the matter of election itself, viz: That no election was necessary, except in a case where there was a plain inconsistency between the will and the dower interest of the wife—in other words, such circumstances as rendered it necessary that the widow would be both taking under the will and against it at the same time, thus conforming our legislative change in the common law to the path indicated in the 9th Sec., 3 and 4 W. 4, c. 105, which was the remedy conceived by Parliament for the mischiefs attending the common law of elections in England. Tom. Law Dic. 585.

The second change is in fixing a time in which the dissent

of the widow to the will shall be made known, and in which he right of election must be exercised, rather than leave her, as she was at common law, restricted to no time, the mischief of the system being that estates were delayed in settlement, that others having interests under the will, as well as the executors and creditors, were never certain as to whether the dower interest of the widow was excluded. Any one at all familiar with the judicial history of England, and of the United States, during the time the doctrine of the common law prevailed upon these two matters, will readily acknowledge the very great mischiefs occasioned by the want of more fixed and certain rules in reference to the matter of election.

The remarks of the Master of the Rolls in Brodie vs. Burry, 2 V. & B., 129, show this great uncertainty. He says : " If it were now necessary to discuss the principles upon which the doctrine of election depends, it might be difficult to reconcile to those principles, or to each other, some of the decisions which have taken place on the subject."

In this view our construction constitutes an effectual remedy for these evils. Besides, if this is not the effect of our statute, we are completely at sea when we endeavor to give it a construction conforming to the primary rules which control in the construction of statutes of this nature.

Under this statute, it is impossible that the practice prevailing in a court of equity upon the subject of election can obtain. If the effect of the failure to to dissent *is in law an election to take the will,* that is an end of the matter, because a court of equity, except upon the ground of fraud, or some other like ground, cannot give a construction which will defeat the plain result of the statute. And if the effect of the law is not such an election, it has no effect at all, as the whole matter is left just as it was before.

But let us consider this case briefly in that aspect. What is the doctrine of election ? *It is not a rule of positive law, but a rule of practice in equity.* The doctrine originates

thus :   Election involves choice—choice involves knowledge, a knowledge both of the facts and of the law applicable to the subjects matter in reference to which the choice is to be made.   In the absence of either branch of this knowledge, as to both or either of the two subjects, it cannot as a matter of fact be said that a choice has been made between the two subjects, because the mind has not really acted with reference to the two subjects as to which it should elect, but as to two other subjects which the party believes exist as the subjects in reference to which his election is to be made.   A court of equity in such cases will permit the party who has thus acted in ignorance either of rights or facts, and who has thus failed to exercise his right of election, to exercise it when that knowledge is acquired, and will relieve him from an antecedent choice made.

There are cases where the widow, having accepted the provisions of the will, is relieved upon the ground that the property is subject to debts then existing of which she had no knowledge at the time of her choice.   Such are some of the cases cited, but they differ materially from this case.

While the rule stated is the general rule of practice, yet other circumstances, besides a knowledge of rights and an accurate knowledge of the comparative values of the two things which are the subjects of election, may be sufficient to bind a person.   1 Ball & Beat. 24.   These circumstances arise out of the original intention, acquiescence in the acts of others, the effect of acts of the party having the right of election on the interests of third persons, and the lapse of time.   They are so infinitely varied and modified in different cases that no rule applicable to all can be laid down; each must be determined on its particular grounds.   1 Mc-Clel., 541.   What are the facts here ?   The will made a bountiful provision.   The widow expresses assent to the provisions of the will, accepts the personal property bequeathed to her under the codicil, and acts for four or five years in entire harmony with its provisions.   During this time she

has frequent conversations, with one of the executors as to the condition of the estate, and as to what will probably be her share. These are the acts from which an election may be implied. On the other hand, while the bill fails to make such allegation, the plaintiff, in her testimony, states that she knew nothing about the nature of her dower rights, and that she had never been told of them until the year 1865. At this time the estate had suffered a loss amounting to not less than $150,000 from the emancipation of the slaves. It had become insolvent. Every act of the widow up to the time of this loss manifests acceptance of the will. The election she would now make, if permitted so to do, would not be an election in reference to facts existing at the time she should have made it. It would be an election where the relative values of the two subjects had entirely changed from what they then were. Did a court of equity relieve her, it could not be upon any ground of misapprehension of her rights, or of facts as they existed from 1860 to 1865, but upon a ground of loss, occurring in the natural order of things. In other words, a court of equity is here desired so to act as to establish a principle of insurance against loss from events subsequent to an election.

Under the provisions of the will, the executors were expected to pay the debts of the estate from the income derived from the use of the property. "For the purpose of paying my just debts, I desire my executors to keep my planting interest up for the space of seven years," are the words of the will. A creditor who, for this space of time, awaits the satisfaction of his claim, expecting payment from the income of the estate, and acts in conformity to the will, should not be made to abate his claim on account of a loss, which neither he nor the widow foresaw—a loss, too, attributable to the results of a conflict pending at the time she had the right of election, and before it was exercised.

It is insisted that the act prescribing a time within which the widow was required to file her dissent to the provisions

of the will was a statute of limitation when considered in reference to her dower, and that the act which we have construed was suspended by virtue of the act of December 13, 1861, which enacts, " That the statutes of limitation now in force in this State, in relation to civil actions of every description be, and the same are hereby suspended," &c.

The will in this case was admitted to probate on the 14th day of May, A. D. 1860. Over one year had elapsed before the suspending statute was passed, and hence the claim was completely barred before the suspending statute was passed, so that even if a claim to dower was embraced in our statute of limitations, which is at least a doubtful question, the act of 1861 did not affect it, as that act contains a proviso to the effect that it shall not be construed so as to prevent any defendant from pleading said statute or statutes of limitation in any cause wherein the same shall have run before the passage of the act.

Art. XV. Sec. 3 of the Constitution of this State provides that " all claims of widows which were not barred by the statutes of this State on the 10th day of January, A. D. 1861, shall be considered good and valid for the period of two pears from the ratification of this Constitution." This suit was brought within two years after this ratification, and it is insisted that the claim of the widow in this case is not barred. Any claim which the widow had to dower in this estate was barred by her own act anterior to this action of the convention. The claim for dower was completely barred. It had gone out of existence. We do not think that it was the purpose of the convention to revive such a claim once destroyed. Its intention was simply to suspend any limitation which might exist as to a claim of dower where third persons during that time had held adversely to plaintiff. It was not its purpose or intention to set aside a voluntary election made by the persons themselves and give them a right to make a second election under a new state of facts. In other words, it was not the intention of the con-

vention to suspend, in all cases, the operation of this statute during that time. It was its purpose to protect a claim for dower against any adverse possession during that time, and not to change the elementary character and nature of the claim for dower. It intended to affect the remedy where a claim for dower existed and had not been abandoned, but not to change the right or recreate a claim for dower which had been abandoned under the statute.

The judgment is reversed, and the case is remanded with directions to enter judgment for the defendants.