Gaston, Judge.'
 

 The first question presented in this case is, whether the plaintiff has a right to dower in the land which she alleges was conveyed by the defendant
 
 Peter,
 
 to his son
 
 Peter Craven,
 
 jun. her deceased husband| If this question shall be determined in her favour, it will be necessary to ascertain the disputed facts in relation to that conveyance; but if it be decided against her, then the bill must be dismissed, because her claim to relief is founded exclusively upon this right. Before the year 17'84,
 
 (Rev. eh.
 
 204,) the established law of this State in relation to dower was the same, with a few7 exceptions, not affecting the present enquiry, which our ancestors brought with them from England. The widow w7as entitled to be endowed of one third part of all the lands of inheritance whereof her husband was seised at any time during the coverture, and of which any issue wdiich she might have had, could by possibility have been heir; and her claim follower was liable to be defeated or barred either at law7, or in equity, by those well know'n means which according to the law of England,
 
 *340
 
 constituted either legal or equitable impediments to its assertion. Our act of 1784, made very important alterations in the law relative to dower. Under this act, the widow was entitled to be endowed of a third part, not of all the lands whereof her husband was seised during the coverture, but of those only whereof ho died seised. The claim to be endowed was also restricted to the widow whose husband had died intestate, and to the widow who within six months after the probate of her husband’s will, “the same not having made any express provision for her by the gift or devise of such part of his real or personal estate as was fully satisfactory to her,” should signify her dissent thereto in open court. The act protected the widow, whom it declared thus entitled, against conveyances made by her husband with intent to defeat her of dower, and furthermore declared her entitled, if her husband left no child, or not more than two children, to one third part of his personal estate, but if he left more than two children, to an equal share with each of the children. The act also regulated the mode of proceeding to obtain dower, and endeavored to render it easy and summary. It directed that a petition should be filed in court setting forth the lands of which her husband died seised, and demanding
 
 dower;
 
 that thereupon a writ should issue to the Sheriff, to summon a jury who were to set off to her a third part of her husband’s land, and put her in possession, which possession should vest in her an estate for life therein, and who should also allot to her the part of the personal estate to which she was entitled, to enure to her forever. Time soon began to manifest those inconveniencies which human sagacity seldom foresees, and never adequately guards against, and which almost necessarily follow upon any sudden change iri a system long incorporated into the institutions of a country. The act of 1791,
 
 tRev.
 
 eft. 351,) recites that the power given by the act of 1784 to the widow, of dissenting from her husbands will “as therein regulated, deranges the whole estate, and is likely to produce the most unhappy dissentions, and expensive law suits,” and undertakes to prescribe
 
 *341
 
 new regulations by which it hopes to remedy these great-mischiefs. It directs that when a widow shall have signified her dissent to her husband’s will by virtue of the power given to her by the former act, and a jury shall be summoned to allot her dower, they shall first enquire whether she is as .conveniently and comfortably provided for, as if dower were allotted, and if they be of that opinion, they shall so return to the Court, and by that' return she shall be precluded from any claim upon her husband’s lands, except those devised to her by the will. It is silent as to what shall be done in case the jury upon that enquiry should come to a different conclusion. It directs also that when a jury shall be summoned to set off to a widow' thus dissenting, her paid of her husband’s personal estate, they shall enquire whether the legacies given her be not equal to her distributive share, and if they so return, she shall be therewith content; but if they bo of opinion that the provision in the will is not equal to a distributive share, they shall allot to her so much in addition as will make it equal. The act
 
 then
 
 points out the various modes of effecting this equality accordingly as there may be a
 
 residuum
 
 of specific articles “not given away in particular legacies,” or as the
 
 residuum
 
 may consist of money, 'or as there may be no
 
 residuum,
 
 or an insufficient
 
 residuum.
 
 Several other provisions are made in this act, and in others subsequently enacted, further regulating this subject, but as they do not affect the determination of this question, it is unnecessary now to consider them.
 

 The husband of the .plaintiff made a will by which he bequeathed to her personal estate, but devised no land ; this will has been proved; and she has not dissented therefrom — assuming then for the present that her husband died siezed of land, has she a right of dower in that land? So far as we know', or have been informed, this question is now, for the first time, presented for judicial consideration, and we have to determine it without any aid to be derived from the learning and intelligence of our predecessors. One case indeed has been
 
 *342
 
 been referred to in the argument, that of
 
 Miller
 
 and wife against
 
 Chambers,
 
 decided in this Court; but of which no report is to be found, in which there is no opinion filed, and of which we can learn no more than is shewn by our records. In that case the former husband of Mrs.
 
 Miller,
 
 had left a will in which there was no provision for her of
 
 any kind,
 
 and the Court sustained her claim to dower, although she had not entered of record her dissent to that will. I was of counsel in that case for the defendants, and have no doubt but that the ground on which the decree rested has been truly stated hero in the argument. It was there contended on the part of the plaintiffs, that the dissent required was not a declaration of dissatisfaction with the will, as the
 
 words
 
 of the act seem to indicate, but dissatisfaction with the insufficient provision thereby made, and that it was idle to require a solemn dissent to be recorded, when there was nothing to dissent from ; and it was further insisted that the act of If84 was intended to confer on the widow the right, and impose upon her the obligation, to elect between the property given to her by the will, and the provision made for her by the law, and that it could not apply but in cases where an opportunity of election was presented. One or both of these positions we must presume, received the sanction of the Court.
 

 The cag0 f
 
 Miller
 
 v
 
 Cham-
 
 cript,) ítataTby J.toes-dowls cntiiiaUo <]owor wllcn her n^provisSÍfor her, although she traedhor dissent from the wi!1-
 

 The present occasion calls upon us for no opinion, nor do we mean to express any, on the point adjudged in the case referred to. We are bound to regard every adjudication of this Court as clear evidence of the Law of the land,
 
 until
 
 the contrary is conclusively shewn. If indeed, the revision of that determination were necessary, we should not hesitate to enter upon it, hut we should do so with all the respect which is due to the high talents of those who made it, and all that solicitude for stability and certainty in judicial decisions which a deep sense of duty ought to inspire. But that judgment and the positions on which it is believed to be founded, do not bear upon the question in this case. Here there was a provision by will for the plaintiff, and something tiiere-fore from which she could dissent, and which she might
 
 *343
 
 elect to take in preference to what the law would give. For ought we know, the provision was ample, and so far satisfactory, that she was unwilling to protest in open Court against it as insufficient, or against the will as treating her with injustice. The will has not been produced, and we know nothing of it but from the plaintiffs statement in her bill. She alleges that it gave her personal property, hut no land, and upon this allegation she claims dower, although she has not dissented.
 

 A widow is entitled to a provis-real and personal estate of he^hns-ever’liberally he may have provided for her out of one, she may, díssenTtoMswill obtain her legal tlie'other °Ut °f
 

 On behalf of the plaintiff it is insisted, that under the acts referred to, the widow is recognized as having a perfect right to a certain part of the land as well as of the personal property of her husband; that
 
 these
 
 are regarded as entirely distinct funds, that whatever may he the value of the legacies given her, and however far it may exceed that of a distributive share, she is nevertheless entitled to a full dower in the land ; that she may save the unnecessary enquiry with respect to her share of the personal property when satisfied therewith, and dissent only in respect to the
 
 insufficiency
 
 of the land given her; and when personalty
 
 alone
 
 is bequeathed, her omission to dissent amounts to no more than an acknowl-edgement that she does not complain in that respect, This argument has been attentively considered, but it ]ias not induced us to adopt the conclusion which it en-deavours to establish. The widow is indeed regarded as ]laying a right to a part of both species of property,
 
 ° °
 
 Í 1 1 1
 
 J
 
 and these are such distinct funds that she may, however
 
 ^crully
 
 provided for out of one them, successfully assert a claim to be
 
 legally
 
 provided for out of the other. But w^° *s the widow thus entitled, and how is she to advance this claim ? The act of 1791 is entirely silent in these respects. It prescribes only the proceedings which are to take place after the judgment of the Court shall have been rendered in favor of the petitioner for dower, and after the jury is summoned in pursuance of that judgment, and by its
 
 express
 
 and unequivocal terms can apply to no case where a dissent has not been expressed. “AVhcn a widow
 
 has
 
 by virtue of the power to her given in the said act, signified her dissent from her husbands
 
 *344
 
 will, and the Sheriff
 
 in consequence thereof,
 
 and by order of thecourthas summoned a jury &c.” such words as these leave no room for construction. Recourse therefore must be had to the act of 1784, to answer these enquiries, and the language of this act is very explicit. It enumerates two classes of widows for whom it provides — the first comprehends the widows of those who have died intestate, in which class the plaintiff is not included — and the second the widows of those who have left last wills, and therein not made
 
 any
 
 express provision for their wives by giving and devising such part
 
 or
 
 parcel of their
 
 real or personal estate,
 
 as shall be fully satisfactory. She claims to be included in this class, not because her husband has not made
 
 any
 
 provision for her in real or personal estate — lie has provided for her in personal estate— but because that provision is not
 
 fully
 
 satisfactory, and she wants dower in his lands. How is this claim to be asserted? The act answers, “Such widow may signify her dissent thereto before the judges of the Superior Court, or in the court of the county where she resides, in open court within six months after the probate of the will, and
 
 then anil in that case,
 
 she shall be entitled to dower in the following manner,
 
 kc.”
 
 The expression of this dissent in the manner prescribed, is thus made by the plain words of the act, an indispensable pre-requisite to the assertion of this her claim. Where the language of a statute is free from ambiguity, there is much hazard of misconstruction by departing from it in search of the supposed policy of the Legislature. If however we are to suppose that the Legislature intended to establish a more general and precise rule of election, than that which theretofore prevailed, when a demand of dower by a widow conflicted with the will of her husband, this supposition will conduct us to the same result as is indicated by the literal construction of the statute. Every devise or bequest in a will imports a bounty, and therefore
 
 in general,
 
 cannot be averred to be given in satisfaction for that to which the devisee or legatee is by law entitled. In consequence of this principle it was the law before our act of 1784, that a devise
 
 *345
 
 of lands to the wife could not be averred to be in satisfaction of dower unless it was so expressed, or unless, according to the opinion of Lord
 
 Camden
 
 in
 
 Villareal v Galway,
 
 (1
 
 Bro. Rep.
 
 292,
 
 note, Jhnbler
 
 682,) the claim of dower disappointed the will, and was inconsistent with it. Still less could a bequest of personalty where
 
 no
 
 notice was taken of dower,
 
 (Ayres
 
 v
 
 Willis,
 
 1
 
 Ves.
 
 230,) be considered as a gift in satisfaction thereof, and imposing on the widow the necessity of choosing between the gift and her legal dower. But it was clear that if the bequest was declared to be made in satisfaction of dower, or such intention could be deduced by manifest implication from the will, the widow was bound to elect, either to accept the testamentary provision, or refusing it to betake herself to her dower. It is needless to state the authorities for this position, but they may be found by recurring to Chancellor
 
 Kent’s
 
 Valuable commentaries
 
 (Vol 4. pages
 
 56 & 57.) The Legislature substituted a new rule, more absolute and universal. They made every case of a testamentary disposition by a husband in favor of his wife, á case of election — whether the provision in real or personal estate was made to her, or to some other person for her use, whether the intent that she should take it in lieu of dower was expressed or not expressed | and whether it could be implied, or could
 
 not
 
 be implied from the structure and language of the will. And to remove all dispute as to the fact of her election,, they declared her to have elected to take under the will, unless her refusal so to take was manifested within a prescribed time,
 
 by
 
 a solemn dissent in open court.
 

 It is to he recollected that the act of 1784, contempt at _ ed an acceptance of the testamentary provision as "‘fully satisfactory,” or an entire renunciation of it. All
 
 its
 
 enactments must be construed with reference to the
 
 then
 
 purposes of the Legislature. The widow could not under that act hold the personal property given to her, and get dower by law. Unless she dissented, the will regulated the extent of her claims upon the estate of her husband j and if she dissented, the law prescribed what
 
 *346
 
 should be their extent, viz: one third part for life of his lands, and a third or a smaller part, according to the number of children, of his personal property absolutely. The dissent entitled her to this, but to no more. The power of the widow to procure indirectly, and in consequence of dissent a greater part of the estate than she could have claimed in case of intestacy, grew out of the new regulations made by the act of 1791. Perhaps the "Legislature of 1791 did not foresee this result, or if they did they might have regarded it as a less evil than those which occupied their minds, and which they were anxious to cure. Bo this as it may these new regulations are, as we have seen necessarily coniined to the cases where a dissent has been entered, and it cannot be inferred that such a power does exist where there is no dissent, because it may be exercised when there is a dissent. It is very true that the regulations in the act of 1791 do offer strong temptations to widows to dissent in many cases where a sense of propriety ought to forbid them from doing so.
 
 It
 
 insures to them all that is given, however greatly it may exceed in one species of property their reasonable shave, and presents them a chance of getting more in the other, even to the injury of the children of their husband: But there is a check, wheth* er sufficiently strong or not, it is not for us to say, upon the wanton abuse of this power. The dissent must he expressed within six mouths after probate of the will, while the memory of the deceased is fresh in their minds, and must be declared not in a chamber, were the influence of public sentiment may bo disregarded, but in open court of their county. 4n Interpretation upon these statutes not called for by their words, nor required by tbeir objects, will not be recommended to our judgment because it lias a tendency to remove this check upon the abuse of a power to which there is, (unavoidably perhaps,) a too strong temptation.
 

 if we yet entertained doubts upon this question, there are interests of great magnitude and of general concern, the security of which demands the decision which we shall make. The widows right to dower is paramount
 
 *347
 
 to the claims of her husband’s creditors. It attaches to the lands after they have been aliened by the heirs. There is no statute of limitations prescribing the period within which it must be asserted. Justice, which it is the first object of every well regulated society to establish, and the repose of the community, an object second only in importance to justice, require that it should be ascertained, as speedily as convenience will permit, whether the lands of a deceased man in the hands of hie heirs and devisees are, or are not subject to this incum-brance. The law has defined the time, and prescribed the mode when and how, this fact can be certainly known. The most obvious considerations of public policy forbid, without the clearest warrant, judicial exposition which will have a tendency to defeat this great purpose of the law.
 

 It is the opinion of the Court that the plaintiff has not a right to be endowed of the land in respert to which she has instituted this action, and that her bill must therefore be dismissed. But the Court will not give the defendant costs. The question on which the cause is decided, was a new one and well worthy of being tried, and the conduct of the defendants in spoliating the deed has been highly reprehensible. The parties must pay their costs respectively.
 

 Per Curiam. — Declare that
 
 Peter
 
 Craven junior, duly made his will, and thereby bequeathed to the plaintiff a part of his personal estate, that the said will was duly proved, and that it doth not appear that the plaintiff dissented therefrom within &c. and that therefore the plaintiff hath not in law a right to demand dower of the lands of the said
 
 Peter
 
 her husband, and dismiss the bill without costs.