In the Matter of the Estate of JULIUS ZWEIG, Deceased.
In the Matter of the Estate of HERMAN LOTTMAN, Deceased.

Surrogate's Court, Kings County, December 17, 1932.

*Annie Zweig,* petitioner, in person.

*Sol Rosenblum,* for the petitioner in Lottman proceeding.

*Sidney Rosenberg,* for Sarah Lottman.

WINGATE, S.  It is recent and familiar legal history that the Legislature, by chapter 229 of the Laws of 1929, enacted laws which radically altered the rights of a surviving spouse in the estate of a decedent.  The ancient legal landmarks of dower and curtesy were abolished, and in their place the survivor was given a right to claim specified portions of the estate of the departed spouse.

As was pointed out in the first report of the Commission to Investigate Defects in the Laws of Estates, the legislation of which this was a part (Legislative Document, 1929, No. 62), the general purpose of the changes in the law was to harmonize into one uniform system the rules of succession to real and personal property (p. 15), to abolish the common-law rights of dower and curtesy (pp. 17–20) and to adopt a statute similar to that enacted by Pennsylvania in 1917 permitting either surviving spouse to take an intestate share against the provisions of the will (p. 32).

The particular interests in the estate of the decedent which the survivor may receive by an exercise of the right of election given by the statute are not presently pertinent.  The subject-matter of this discussion is the manner in which the benefits thus given are capable of procurement.  On this subject, the Legislature made the following provisions in subdivision 7 of section 18 of the Decedent Estate Law: " 7. An election made under this section shall be in lieu of any right of dower, and must be made within six months from the date of the issuance of letters testamentary or if letters testamentary have not been issued from the date of the issuance of letters of administration with the will annexed, and shall be made by serving written notice of such election upon the representative of the estate personally or in such other manner as the surrogate may direct and by filing and recording a copy of such notice with proof of service in the surrogate's court where such will was probated."

Provision is also made for an enlargement of the time " to make such election " " before its expiration " by order of the court, upon a showing of reasonable cause.

As the subdivision is worded, it would *prima facie* appear that the Legislature had made the performance of the following acts a condition precedent to the acquirement by the surviving spouse of any rights other than those given by the will in the estate of the decedent:

1. Service of a written notice of election upon the representatives of the estate within six months from the date of the issuance of original letters.

2. Filing and recording such notice with proof of service in the court which probated the will within the same period.

The proper construction of this portion of the enactment has not been made the subject of adjudication in any reported case. It so chances, however, that in two cases which were submitted almost simultaneously, various questions relating thereto are raised. For reasons of convenience, these cases will be decided together, since the same basic principles govern both.

The facts disclosed in the Lottman application are that decedent died on October 31, 1931, leaving a will dated the twenty-sixth of the previous September. Objections to its probate were filed by the widow, but were subsequently withdrawn, and such will was admitted, and letters testamentary issued to the three executors, on March 17, 1932. This will made no provision whatsoever for the widow. The affidavit of her attorney states that on March twenty-fifth he served on one of the executors a notice of election to take against the will as in intestacy. This is emphatically denied by the latter. An alleged copy of the notice, with merely a type-written signature of the attorney, is attached to the moving affidavit. This was not signed by the widow and was admittedly not filed or recorded in this court. The application prays leave to file this notice for record.

In the Zweig case the death occurred on November 6, 1931, and a will dated March 27, 1930, and a codicil executed on July 9, 1931, were admitted to probate on December 10, 1931. Letters testamentary were issued on the same date. The widow claims to have served a notice of election on one of the executors on January 4, 1932, reading as follows:

" To TITLE GUARANTEE & TRUST COMPANY and MAX HERZFELD.

" I hereby elect, as widow of Julius Zweig, deceased, to receive $2,500 under the Decedents' Estate Law out of the Estate of Julius Zweig.

" *January 4th*, 1932.                    (Signed) ANNIE ZWEIG."

By the terms of the will the entire estate, which amounts in gross to $100,000, was, with the exception of two legacies totaling $17,000, left to the widow for life.

The questions presented for determination on the facts for these cases are:

1. Must a notice of election, in order to assure rights under the

statute, be served and/or filed within six months from the issuance of letters?

2. Must both acts be performed within the six months' period?

3. Is a surviving spouse for whom no provision is made in the will, required to elect in order to receive any share in the estate?

4. If a default has been made in compliance with the directions of the statute as to the time of performance of the required act or acts, is it within the power of the court to grant relief in that regard upon an application made after the expiration of such time?

5. What effect, if any, is produced upon the requirements specified in the statute to effect an election, by the participation by the surviving spouse in a contest of the will which is subsequently admitted to probate?

6. Is a notice of election signed merely by an attorney at law in typewriting, a sufficient compliance with the terms of the statute?

The statement cannot successfully be refuted that New York had rather lagged behind some of her sister States in reforming the common law affecting the rights of a surviving spouse in the property of a decedent. At the date of the enactment of the present statute, twenty-four States had abolished dower, Vermont, the earliest, in 1787, and thirty-six had cast curtesy into the limbo of forgotten things. This, however, tells only a part of the story, since investigation of the various State statutes discloses that, beginning at an extremely early date, a majority of jurisdictions began the process of reforming the common-law rights of a surviving spouse and placing them on a more conveniently determinable basis than that existing in England at the time of the Revolution.

Whereas, therefore, the questions of interpretation of the present statute herein raised have never been directly adjudicated in this State, a vast body of law has grown up in the various States of the Union, including New York, which possesses possible pertinence in the solution of the problems propounded in the proceedings at bar.

At common law a widow was entitled to dower, which consisted of a life estate in one-third of all real property of which her husband was seized at any time during coverture. Where the deceased husband gave testamentary benefits to the widow, either expressly, or by necessary implication, in lieu of her common-law dower rights, an inconsistency developed. It was obviously unjust and improper that she should receive both benefits, but, as is pointed out in *Carper* v. *Crowl* (149 Ill. 465, 474), the common law was powerless to deal with the situation, wherefore the doctrine of election was imported into equity from the civil law, with the result

that this tribunal of good conscience declared that where the donee had chosen one benefit, it would estop her from claiming the other. (*Carper v. Crowl, supra,* 475, 476.)

The practical difficulty inherent in this situation lay in the uncertainty of title resulting from frequent delays in making the election. The ready remedy for this condition naturally lay in the direction of statutory enactment, declaring that where factual conditions required an election, one or the other alternative should be held to have been chosen, unless the person possessed of the alternative rights should select the other in some specified manner and within a designated time. Such a statute was early enacted in New York, and similar laws were passed in a majority of the States. The purposes of such statutes have been repeatedly stated, perhaps nowhere more clearly than in *Stephens v. Gibbes* (14 Fla. 331), where the court says (at p. 357): " * * * Their enactment originated in the desire and necessity for curing the evils incident to the common-law rules upon these subjects and their want of perfect adaptability to the changed civilization and government of the American States. This being such a statute, we must so construe it as to correct the mischiefs which it was enacted to remove.

" What were the mischiefs which existed at common law, and at which this statute was aimed? These mischiefs are apparent from the changes made by the statute. These changes were two in number. The first change is in the fundamental rule controlling in the matter of election itself, viz: That no election was necessary, except in a case where there was a plain inconsistency between the will and the dower interest of the wife — in other words, such circumstances as rendered it necessary that the widow would be both taking under the will and against it at the same time, thus conforming our legislative change in the common law to the path indicated in the 9th Sec., 3 and 4 W. 4, c. 105, which was the remedy conceived by Parliament for the mischiefs attending the common law of elections in England. Tom. Law Dic. 585.

" The second change is in fixing a time in which the dissent of the widow to the will shall be made known, and in which the right of election must be exercised, rather than leave her, as she was at common law, restricted to no time, the mischief of the system being that estates were delayed in settlement, that others having interests under the will, as well as the executors and creditors, were never certain as to whether the dower interest of the widow was excluded. Any one at all familiar with the judicial history of England, and of the United States, during the time the doctrine of the common law prevailed upon these two matters, will readily

acknowledge the very great mischiefs occasioned by the want of more fixed and certain rules in reference to the matter of election."

To this the Supreme Court of North Carolina, in *Craven* v. *Craven* (17 N. C. 338, 346), adds the following: " If we yet entertained doubts upon this question, there are interests of great magnitude and of general concern, the security of which demands the decision which we shall make. The widow's right to dower is paramount to the claims of her husband's creditors. It attaches to the lands after they have been aliened by the heirs. There is no statute of limitations prescribing the period within which it must be asserted. Justice, which it is the first object of every well-regulated society to establish, and the repose of the community, an object second only in importance to justice, require that it should be ascertained as speedily as convenience will permit, whether the lands of a deceased man in the hands of his heirs and devisees are, or are not, subject to this incumbrance. The law has defined the time, and prescribed the mode when and how, this fact can be certainly known. The most obvious considerations of public policy forbid without the clearest warrant, judicial exposition which will have a tendency to defeat this great purpose of the law."

Similar and additional cogent considerations are set forth in *Miller* v. *Stephens* (158 Ind. 438, 440, 443); *Bailey* v. *Hughes* (115 Iowa, 304, 307); *Baldozier* v. *Haynes* (57 id. 683, 685); *Ex parte Moore* (8 Miss. 665, 668); *Dougherty* v. *Barnes* (64 Mo. 159, 161); *Jaques* v. *Chandler* (73 N. H. 376, 380); *Beck's Estate* (265 Penn. St. 51, 55); *McGhee* v. *Stephens* (83 Ala. 466, 469); *Cribben* v. *Cribben* (136 Ill. 609, 614); *Baily's Estate* (285 Penn. St. 408, 412); *Flower's Estate* (30 Penn. Dist. 967, 968); *Ludington* v. *Patton* (111 Wis. 208, 231), and other authorities too numerous to mention.

As a result, the dictates of public policy, inherent in the reasons for such enactments, have led the courts construing them to determine that when, in such a statute, a certain time is designated within which a right must be exercised, time will be considered of the essence, and, barring the presence of actual fraud in preventing the performance of the act within the time specified, the limitation must be observed under penalty of the loss of the right.

This is nowhere more clearly stated than by the New York Court of Appeals in *Akin* v. *Kellogg* (119 N. Y. 441), in which the court says (at p. 447): " * * * The Revised Statutes have but followed the common law, in their provision for an election by the widow between a testamentary gift in lieu of dower and the dower right itself; but they have further provided that the widow shall be deemed to have elected her devise, or pecuniary provision, unless,

within one year after the death of her husband, she shall enter upon the lands to be assigned to her for her dower, or commence proceedings for the recovery or assignment thereof. Where, then, a provision is, by the express terms of the will, made in lieu of dower, the widow is obliged to make an election, whether to accept it, or to renounce it for what the law gives to her. She cannot have both, and she is at once chargeable with the duty of informing herself, so as to make her election; and that she shall have a certain period of time for that purpose, the legislature has provided what was deemed a reasonable season of delay, and its enactment that the election must be made within one year has the same force as a statute of limitation upon the widow's rights."

Like results have been reached in every similar case which the research of the court has disclosed. A few of the many which might be cited are *McGhee* v. *Stephens* (83 Ala. 466, 469, 470); *Merchants' Nat. Bank* v. *Hubbard* (222 id. 518, 523); *Stearns* v. *Stearns* (103 Conn. 213, 225); *Stephens* v. *Gibbes* (14 Fla. 331, 356); *Wilson* v. *Fridenberg* (21 id. 386, 390); *Scheible* v. *Rinck* (195 Ill. 636, 640); *Koelling* v. *Foster* (150 Ill. App. 130, 136); *Warren* v. *Warren* (148 Ill. 641, 649); *Pearce* v. *Pearce* (281 id. 194, 198); *Miller* v. *Stephens* (158 Ind. 438, 442); *Whitesell* v. *Strickler* (167 id. 602, 610, 618); *Draper* v. *Morris* (137 id. 169, 173, 175); *Bullock* v. *Smith* (201 Iowa, 247, 249); *Bailey* v. *Hughes* (115 id. 304, 307); *Perry* v. *Wilson* (183 Ky. 155, 162); *Smith* v. *Perkins* (148 id. 387, 393); *Gillespie* v. *Boisseau* (23 Ky. L. R. 1046, 1049); *Mercer* v. *Smith* (32 id. 1008); *Shelton* v. *Sears* (187 Mass. 455, 458, 460); *Pratt* v. *Felton* (58 id. 174, 176); *Kernan* v. *Carter* (132 Md. 577, 592); *Collins* v. *Carman* (5 id. 503, 531, 532); *Ex parte Moore* (8 Miss. 665, 668); *Dougherty* v. *Barnes* (64 Mo. 159, 161); *Gant* v. *Henly* (Id. 162); *O'Brien* v. *Sedalia Trust Co.* (319 id. 1001, 1009); *Daudt* v. *Musick* (9 Mo. App. 169, 173); *Stark* v. *Hunton* (1 N. J. Eq. 216, 228); *First Nat. Bank & Trust Co.* v. *Scott* (109 id. 244, 245; *Jaques* v. *Chandler* (73 N. M. 376, 380); *Craven* v. *Craven* (17 N. C. 338, 344); *Palmer* v. *Voorhis* (35 Barb. [N. Y.] 479, 483); *Jones* v. *Fleming* (104 N. Y. 418, 432); *Matter of Tailer* (147 App. Div. 741, 751); *Evans* v. *Ogsbury* (2 id. 556, 560); *Oliver* v. *Wells* (254 N. Y. 451, 460); *Stilley* v. *Folger* (14 Ohio, 610, 647); *Daub's Estate* (305 Penn. St. 446, 453; *Minnich's Estate* (288 id. 354, 357); *Beck's Estate* (265 id. 51, 54); *Waterbury* v. *Netherland* (53 Tenn. 512, 521); *Walker* v. *Bobbitt* (114 id. 700, 710); *Harry* v. *Green* (28 id. 182, 184); *McGlaughlin* v. *McGlaughlin's Legatees* (43 W. Va. 226, 242); *Ludington* v. *Patton* (111 Wis. 208, 231); semble accord, *Gaster* v. *Gaster* (90 Neb. 529).

On reason and authority, therefore, the first question above propounded must be answered in the affirmative. The effect of the insertion in the statute of a time limit within which the granted privilege must be exercised is a true statute of limitation, and if the right to take against the will is not validly exercised within the period indicated, the privilege will be deemed to have lapsed with like effect as if it never had existed.

Approaching the solution of the second question, of whether the party desiring to elect must both serve the notice and file and record it within the time limited, it will be noted that the language of the statute is in the conjunctive: "An election made under this section  *  *  *  shall be made by serving written notice of such election upon the representative of the estate  *  *  *  *and* by filing and recording a copy of such notice with proof of service  *  *  *." (Italics not in original.)

To hold that the requirements of the statute would meet with compliance by the performance of only one of the acts, namely, *either* service or filing, would require the substitution of " or " for the " and " italicized in the foregoing quotation. Since the enactment is entirely comprehensible as written, such an interpretation would do violence to primary principles of statutory construction.

Fortunately, however, the decision of this point need not rest purely on reason, since in at least nine of the States, the statutes of which have made similar dual acts conditions precedent to the effective exercise of conditional rights of election, the courts of last resort have determined that the performance of both acts within the appointed time is a *sine qua non* to the acquirement of the right. These States are Illinois, Indiana, Iowa, Kentucky, Maryland, Mississippi, Missouri, Pennsylvania and Vermont. No decision of any court has been found in which such a statute has received a diverse construction.

The reasons for such a rule are obvious from the nature of the acts uniformly required to be performed, which are in all cases substantially equivalent to those contained in section 18 of the Decedent Estate Law. Notice to the executor is necessary to enable him properly to execute the trust committed to his care; public record is desirable not only for the information of all others interested in the estate but also for the purpose of preventing a collusive avoidance of the Statute of Limitation, which might result from favoritism of the surviving spouse by the representative of the estate. Finally, the advisability of insistence upon a public record, as avoiding unnecessary litigation, is particularly patent on the facts of the

Lottman case, now before the bar. If a public record within the limited time be determined to be a prerequisite to the perfecting of the right, the question of whether or not such a record exists is a readily determinable matter, which can hardly form the basis for litigation in the court where such record is required to be made. If, however, the alternative opinion were to be adopted, an issue requiring judicial determination would, as in the Lottman case, be capable of being raised, as to whether or not the notice had in fact been served upon the estate representative within the time required.

These and other cogent considerations for a determination that both statutory requirements must meet with compliance have been advanced by the learned courts of last resort in the several States in which the question has been litigated. (*Scheible* v. *Rinck*, 195 Ill. 636, 640; *Cribben* v. *Cribben*, 136 id. 609, 613, 614; *Miller* v. *Stephens*, 158 Ind. 438, 443; *Draper* v. *Morris*, 137 id. 169, 173, 175; *Bailey* v. *Hughes*, 115 Iowa, 304, 307; *Baldozier* v. *Haynes*, 57 id. 683, 685; *Cook* v. *Bennett*, 207 Ky. 837, 840; *Gillespie* v. *Boisseau*, 23 Ky. L. R. 1046, 1049; *Mercer* v. *Smith*, 32 id. 1008; *Dougherty* v. *Barnes*, 64 Mo. 159, 161; *Gant* v. *Henly*, Id. 162; *O'Brien* v. *Sedalia Trust Co.*, 319 id. 1001, 1009; *Daudt* v. *Musick*, 9 Mo. App. 169, 173; *Wilson's Estate*, 297 Penn. St. 348, 351, 352; *Beck's Estate*, 265 id. 51, 54; semble accord, *Baker's Estate*, 81 Vt. 505; *Wilson* v. *Jarrell*, 137 Md. 558; *Simpson* v. *Simpson*, 120 Miss. 197.) In *Miller* v. *Stephens* (158 Ind. 438) the statute required that the election be in writing, duly acknowledged and filed in the clerk's office and recorded with the will. The widow executed an unacknowledged instrument which was duly filed. In holding that such action on her part was nugatory, the court said (at p. 443): " II. Assuming that the paper signed by Mrs. Murphy was intended by her as an election to accept the will of her husband in lieu of her statutory rights in both personal and real estate, for want of an acknowledgment before an officer it must nevertheless be held invalid, and of no legal effect. The right of election is purely statutory, and can only be enjoyed by a compliance with the statute conferring it. To secure definite action and overcome confusion and controversy, and remove opportunity for imposition upon defenseless widows by unscrupulous heirs, the General Assembly, by the act of 1885, as they had the power to do, provided that the right of election should depend upon its timely and solemn execution. The particular manner of execution prescribed is a condition upon which the right itself rests. The writing, the signing, and the acknowledgment before an officer, are equally essential steps, and the absence of either will make the

instrument null and defeat the election. *Fosher* v. *Guilliams*, 120 Ind. 172; *Draper* v. *Morris*, 137 Ind. 169; *Dudley* v. *Pigg*, 149 Ind. 363."

In *Bailey* v. *Hughes* (115 Iowa, 304) the instrument was duly executed and forwarded to the proper court but was lost and never recorded. In holding this an ineffective exercise of the right of election, the court said (at p. 307): "Written consent, without notice, cannot be treated as an election, unless entered of record; for the statute in express terms so provides. * * * The statute was made not only for the purpose of fixing a definite manner of election, but to make of record all matters affecting the title of the real estate of one deceased, to the end that those dealing with the property may be advised regarding the title."

In view of the fact that the New York statute was, as above noted, expressly patterned upon that of Pennsylvania, which, with slight variations, has been in effect since 1911, the decisions of that State are of particular value in questions of its construction.

In *Beck's Estate* (265 Penn. St. 51) the Supreme Court of Pennsylvania had before it the question of the validity of an attempted election executed by the surviving spouse and filed, but neither acknowledged nor served on the executor, which steps the statute also required. In holding the effort to elect to be wholly futile, the court says (at p. 54): "The requirements as to execution, acknowledgment and delivery are mandatory, and, as appellant's election to take under the will was neither acknowledged nor delivered to the executor, it was ineffective and did not preclude her from electing to take against it. The language of the statute is plain and its meaning emphasized by expressly excluding the delinquent party from all share in the estate until the election has been made as therein required. The manifest intent was to promote certainty in the settlement of estates." .

In *Cook* v. *Bennett* (207 Ky. 837) this doctrine, of the mandatory and exclusive nature of the provisions for exercising a statutory right of election, was carried to its logical and ultimate extreme in a determination that where the statute required acknowledgment of the instrument before a clerk of the court of probate, an election although in all other respects conforming to the statutory requirements, was void where the acknowledgment was taken by a notary public and not by the clerk.

It must, therefore, be determined that, under section 18, an election, to be effective, must both be served upon the representative of the estate and be filed and recorded within the six months' period.

Perhaps the most earnestly advanced contention on behalf of the widow in the Lottman case relates to the third question above noted, and adopts the position that a surviving spouse for whom no testamentary provision whatsoever is made, is not put to an election since there is no alternative benefit to elect, and that in consequence compliance by her with the provisions of subdivision 7 of section 18 is unnecessary to entitle her to receive a share of the estate as in intestacy.

Were the question one arising under the common law, even as modified by statutes requiring an election within a specified time between common-law rights and testamentary provisions, there might be some force to this argument. Here, however, all common-law rights of a spouse, as such, have been expressly abolished by statute. The only common-law right, if it may so be termed, which remains, is the authority given to the decedent spouse to convey his or her property by will. The effect of the statute, in essence, is to place a limitation, in the nature of a condition subsequent, on the decedent's authority to bestow his property by will on whomsoever he pleases. This condition is, that if a surviving spouse shall perform the specified acts set forth in subdivision 7, the decedent shall have a testamentary power of disposition only over that portion of his estate which, in the opinion of the Legislature, is not necessary for the adequate support or provision for the surviving spouse. Except for such provisions as may be made by the decedent for the survivor in the testamentary document, the only interest in the estate which the latter possesses is a right given by statute, on compliance with the conditions specified, namely, to declare an election that the common-law right of the decedent to bequeath his property as he pleases, shall be abridged to the extent which the statute permits. It is patent that this new right is far more effective in the protection of a widow who is diligent in the prosecution of her rights, than the common law right of dower, which it replaces, ever was. This is particularly true under present conditions of mass housing where a large proportion of the community never owns any real property to which the old dower rights might attach. It is, however, a right given the surviving spouse in direct derogation of the former unconditioned rights of testamentary disposition which the decedent possessed, and its enforcement must in consequence be governed by the basic principle of statutory construction that the steps required to defeat the common-law right thus modified must be strictly observed. (*Psota* v. *Long Island R. R. Co.*, 246 N. Y. 388, 393; *Dean* v. *Met. El. Ry. Co.*, 119 id. 540, 547; *Matter of Marsh*, 143 Misc. 609, 614; *Matter of Smith*, 136 id. 863, 880.)

There is abundant authority for the position that if the widow were still entitled to an absolute dower interest under the law, she could not be deprived of it by a will under which she received nothing, even if she failed to elect within the time specified by statute (*McGhee* v. *Stephens*, 83 Ala. 466, 469; *Carper* v. *Crowl*, 149 Ill. 465, 477; *Laurence* v. *Balch*, 195 id. 626, 628), although it would occur if any testamentary provision were made for her even though its value were merely nominal. (*Adams* v. *Adams*, 39 Ala. 274, 278; *Cribben* v. *Cribben*, 136 Ill. 609, 614; *Koelling* v. *Foster*, 150 Ill. App. 130, 136; *Smith* v. *Perkins*, 148 Ky. 387, 393; *Craven* v. *Craven*, 17 N. C. 338, 344.) The distinction between such a situation and that presently existing is clearly demonstrated in the decision of *McGhee* v. *Stephens* (83 Ala. 466). The statute under construction in that case provided that a widow might dissent from her husband's will within a specified time and in a particular manner, in which event she should be entitled to dower and an intestate share of his personalty. The widow did nothing within the allotted time and then brought action for her dower and such share of the personalty. The court held (at p. 469) that since no provision had been made for her in the will, no dissent was necessary to enable her to take dower, as her common-law right remained unimpaired by the statute, but that she must dissent from the will to obtain any personalty. The court points out the differentiation (at p. 470): " The distinction as to the right of the widow to dower, and to a portion of the personal estate, is founded on the principle, that an affirmative statute is requisite to bar the widow's right to dower, without her agreement or consent, and equally requisite to impair the husband's right to defeat her claim upon his personal estate, by testamentary disposition, without making provision for her."

Under the new statutory plan of which section 18 is a part, dower has been abolished by an affirmative statute, so the rights of the widows in the cases at bar fall wholly within the second alternative of the *McGee* case.

With the abolishment of dower, there remain no rights of the widow in the estate except those expressly granted in the new statute. These, however, are expressly granted on a condition that she perform specified acts. Being thus limited, they can never come into existence unless the specified restrictions meet with compliance.

As is said by the Supreme Court of Maryland in *Collins* v. *Carman* (5 Md. 503, at p. 531): " If we are correct in our view of what are now the widow's vested rights, upon the decease of her husband, a failure to renounce does not work a forfeiting of any vested rights;

but more properly speaking, that failure simply prevents her from acquiring the same rights she would have been entitled to had her husband died intestate." Again (at p. 532): " To acquire such rights in opposition to the will, the law makes the renunciation a necessary act. The non-performance of this act, is therefore, not a forfeiture of existing rights, but prevents the acquisition of those rights, which, by its performance, might be secured."

On this subject, as on so many other questions of construction of the statute, the decisions of the courts of Pennsylvania in the interpretation of their substantially identical enactment are entitled to great weight. This particular question has three times been determined by authoritative tribunals of that State, in *Cunningham's Estate* (137 Penn. St. 621, 627); *Flower's Estate* (30 Penn. Dist. 967) and *Minnich's Estate* or *Sherwood's Estate* (288 Penn. St. 354, 358). The consideration of this branch of the subject may, therefore, well close with certain excerpts from these opinions.

In *Cunningham's Estate* (137 Penn. St. 621) the court says (at p. 627): " Election, in the sense that applies to the present contention, means a choice between two courses of action, acquiescence by the widow in her husband's disposition of his property, or disregard of it and assertion of the rights the law gives her."

In *Flower's Estate* (30 Penn. Dist. 967) the following appears (at p. 967): " The learned counsel for the widow ingeniously argued that it was not necessary for the widow to elect to take against the will, because the will left her nothing, and that the 23rd section of the Wills Act of June 7, 1917, P. L. 403, relative to an election by the surviving spouse, applies only when something is left by the will, inasmuch as it refers to the election by a surviving spouse to ' take under or against the will,' and provides that neglect or refusal or failure to deliver the necessary writing within two years after the issuance of letters testamentary ' shall be deemed an election to take under the will.' Election, it is argued, implies a choice between two things, a benefit conferred by the will and the benefit conferred by the intestate law. But the plain intention of the Wills Act, and the acts that preceded it, was to give the surviving spouse, who is dissatisfied with the provision of the will, his or her rights under the intestate law. Subject to this right of his wife, a testator may dispose of his estate as he pleases. * * *

" The learned counsel for the widow frankly admitted at bar that if the testator had given his wife one cent she would be obliged to make her election, because then there would be two things to choose between. The argument logically should admit

that if the testator said in so many words, ' I give my wife nothing,' an equal obligation would arise, and we see no distinction between a gift of nothing and the omission to give anything at all; in short, when the widow is given nothing by the will and wants to get something she is bound to elect to take against it."

It must, therefore, be determined that irrespective of the contents of the will, or of a failure of the testator to make provision for a surviving spouse therein, the latter must perform the acts specified in the statute to effect an election against the instrument, in order to secure the benefits conditionally granted thereby.

Approaching, now, a determination of the fourth pertinent question, it may be noted that the applicants in both cases stress the alleged hardships which will result from an adverse decision, and invoke the equitable powers of the court to ameliorate their position.

Before entering into a discussion of the power of any court, whether of law or equity, to waive or hold ineffectual the clear and direct provisions of a statute, the more particular question of the power of the court to extend the time within which the right of election under the present statute may be exercised, will be reviewed.

The present applications may be viewed in two aspects. The first is that the petitioners are seeking from the court additional time to comply with the mandatory provisions of the statute. The original period of six months, specified therein, has expired, and the applicants seek to perform a portion of the directed steps thereafter. The second viewpoint results from the determination that the statute is one of limitation, with the addition that a failure to comply with the conditions specified therein gives rise to a conclusive presumption that the surviving spouse has elected to have the will stand as drawn. Reasoning from this premise, it follows that an application to be permitted, after the expiration of the limited time, to perform acts which would effect an election against the will, is, in essence, an application for permission to revoke an election already made. These two view points will be considered in order.

Has the court power under the terms of the present statute to grant an extension of time within which to perform the acts necessary to effect an election after the expiration of the primary period indicated therein? The provisions of the act are clear in this regard. After directing that the certain acts to effect the election shall be performed within six months from the probate, it continues: " But the time to make such election may be enlarged before its expiration by an order of the surrogate's court where such will was probated, for a further period of not exceeding six months upon any one

application, upon a petition showing reasonable cause and on notice given to such persons and in such manner as the surrogate may direct. * * *." (Dec. Est. Law, § 18, subd. 7.)

The plain import of this language is to impose three conditions precedent to the power of the surrogate to grant an extension of the time within which the acts of election may be performed, namely, that the application shall be made (1) before the expiration of the time specified in the statute for election, i. e., six months from the date of probate; (2) on a petition showing reasonable cause why such extension should be granted; and (3) on notice to the persons deemed necessary or proper parties by the surrogate.

For present purposes, the third condition may be disregarded, since, unquestionably, the applicants would cheerfully comply with any requirement which the surrogate might make in this regard.

Do the petitions in these proceedings show " reasonable cause " why such extension should be granted? The only causes alleged in the Zweig petition are ignorance of the law, hardship on the petitioner if the relief be disallowed and reliance for advice on the executors. The first-named ground is the sole reliance of Mrs. Lottman.

It is obvious from the language of the statute that the Legislature intended to remit the question of whether or not any particular application presented " good cause " to the judicial discretion of the surrogate, and this has been the method of its disposition in all similar statutes which have been construed by the courts of other States, and, in the absence of a clearly demonstrable abuse of such judicial discretion, it has been held that appellate courts will not disturb the determination of the courts of first impression in this regard. As is said by the Supreme Court of New Hampshire in *Jaques* v. *Chandler* (73 N. H. 376, at p. 382): " Whether good cause was shown — what justice required — has been found as a fact from the evidentiary facts reported, by the tribunal having jurisdiction to find the fact. Such a finding, if supported by any competent evidence, cannot be set aside except under such circumstances as would authorize the setting aside of the verdict of a jury as against the weight of the evidence, i. e., that the result was produced by passion, partiality, or corruption, or that the trier of the fact unwittingly fell into a plain mistake."

The question on this phase of the subject, therefore, resolves itself into one of whether a granting of such an application on the ground of (1) ignorance of the law; (2) reliance upon the fiduciaries of the estate to protect her rights, or (3) personal hardship, would amount to an abuse of judicial discretion.

The first basis is axiomatically insufficient. The principle

" *ignorantia legis neminem excusat* " is one of the oldest known to the law and has been applied on innumerable occasions. Indeed, it may be said to lie at the root of our entire system of jurisprudence. It is applied in *Palmer* v. *Voorhis* (35 Barb. 479) to the former rights of a widow to elect dower in lieu of a testamentary benefit, the court saying (at p. 482): " The counsel for the plaintiff also insists that it was an error to hold that the plaintiff is deemed, under the statute, to have elected to take under the will, because there was no affirmative proof that she was made acquainted with the provisions of the will and with her right of election. The rule of the statute is not that she shall make her election within one year after notice of the contents of the will and of her right of election. But the 13th section is, that she shall make her election, whether she will take the provision and compensation made by the will in lieu of her dower, or whether she will be endowed of the lands of her husband. And the 14th section declares, that she shall be deemed to have elected to take the provision made by the will, unless within one year after the death of her husband she shall enter on the lands to be assigned to her for her dower, or commence proceedings for the recovery or assignment thereof. The devisees and grantees of the husband are under no obligation to give the widow notice of her provisions made for her by the will, and to require her to make her election. This is not the purport of the statute. It imposes no such duty on them as a condition of exonerating their lands from the burden of her claim. She is presumed to know, as well as any one else, when the death of her husband occurs, and although she may not become apprised of the contents and provisions of his will within the period of a year after his death, she is bound to know that if she omits for that space of time to enter upon the lands, or commence proceedings for the recovery or assignment of her dower, her claim will be barred if there is a will with a pecuniary or other provision made for her in lieu thereof. In this respect the statute operates as a limitation of her right of action; so that if the condition upon which it applies actually exists unless she commences her action within the time limited, the right to recover is barred as effectually as it would be, in the absence of a testamentary provision, by the omission to commence her action within the twenty years mentioned in the 18th section of the act."

In *Ludington* v. *Patton* (111 Wis. 208) the court says (at p. 234): " No further discussion of this subject seems necessary. The decisions cited to our attention in the briefs of counsel for appellant, to sustain the theory that a court of equity has power to relieve a widow from the effect of an election or failure to elect to take the provision made for her by law instead of the one made for her by

her husband's will, because of mere ignorance or mistake on her part, cannot be followed. They are out of harmony with the doctrine of this and most courts." To the same effect, see *Stephens* v. *Gibbes* (14 Fla. 331, 356); *Shelton* v. *Sears* (187 Mass. 455, 460); *Akin* v. *Kellogg* (119 N. Y. 441, 449).

In the absence of fraud, which is not alleged in either of these applications, reliance upon erroneous legal advice of others cannot be placed in any category different from an erroneous conception of the law by the individual himself. (*Daub's Estate*, 305 Penn. St. 446, 454; *Waterbury* v. *Netherland,* 53 Tenn. 512; *Akin* v. *Kellogg*, 119 N. Y. 441, 449.) If he had a right to rely on another's legal advice and was misled, it might form the basis of a legal action against the advisor, but in view of the conclusive presumption, so far as his relations with third parties are concerned, that he was acquainted with the law (*Matter of Callahan*, 142 Misc. 28, 32, 34; affd., 236 App. Div. 814), it cannot alter the results of his action or non-action in his relations with third parties.

Nor can the question of personal hardship by reason of the failure to comply with a statutory direction be given weight in an application to relieve an individual of the results of his neglect. This question will be dealt with somewhat more fully, *infra*, but for present purposes it will be sufficient to quote the well-reasoned language of the Supreme Court of Wisconsin in *Ludington* v. *Patton* (111 Wis. 208, at p. 232): " Courts cannot vary the effect of a statute of limitations in any case because of mere hardship. If the law be not so unreasonable as to violate constitutional rights of property, it must be enforced as written, regardless of judicial notions of whether it is right or wrong tested by a correct standard of legislative policy. Many instances are reported in the books where the doctrine has been as rigorously applied to statutes similar to the one under consideration as by this court in the case cited." To the same effect see *Collins* v. *Carman* (5 Md. 503, 531); *Akin* v. *Kellogg* (119 N. Y. 441, 447).

It must be determined, therefore, that were the court to determine that " good cause " for an extension of time within which to elect is shown, by the allegations of the petitions herein, such act would, on basic principles of law, amount to an abuse of judicial discretion.

Over and beyond all this, however, the statute has granted surrogates a discretionary power to extend the period for making the election only before the expiration of the initial statutory six months allowed for the purpose. On fundamental principles of statutory construction, *inclusio unius est exclusio alterius.* No power is given for an extension after the expiration of the time and in the

absence of such a grant of power, it cannot be held to exist. (*Bunker* v. *Murray*, 182 Mass. 335, 336; *Kernan* v. *Carter*, 132 Md. 577, 592; *Daub's Estate*, 305 Penn. St. 446, 454; semble accord, *Wilson's Estate*, 297 id. 348, 353, 354; semble *contra*, *Estate of Woolley*, 96 Vt. 60, 64.)

If the matter be now considered in its aspect of an application to reverse an intentional and valid election in favor of the will, the respective widows are in no more favorable position. While it has been held that such alteration of position may be permitted prior to the expiration of the period within which election was originally permitted if no new rights have been created in the interval (*Eichhorst* v. *Eichhorst*, 252 Ill. App. 575, 583; *Whitesell* v. *Strickler*, 167 Ind. 602, 618; *Nick* v. *Nick*, 195 Iowa, 351, 353, 355; *Wilson* v. *Jarrell*, 137 Md. 558; *Goessling* v. *Goessling*, 287 Mo. 663, 675; *Beck's Estate*, 265 Penn. St. 51, 54; semble accord, *Merchants Nat. Bank* v. *Hubbard*, 222 Ala. 518, 523, 525; *Adams* v. *Adams*, 39 id. 274, 280; *Carper* v. *Crowl*, 149 Ill. 465, 481), it has uniformly been determined that no change of position will be permitted in the absence of active fraud after the expiration of the period (*Stephens* v. *Gibbes*, 14 Fla. 331, 357; *Whitesell* v. *Strickler*, 167 Ind. 602, 618; *Shelton* v. *Sears*, 187 Mass. 455, 460; *Bunker* v. *Murray*, 182 id. 335, 336; *Dougherty* v. *Barnes*, 64 Mo. 159, 162; *Daub's Estate*, 305 Penn. St. 446, 453, 454; *Baily's Estate*, 285 id. 408, 413; *Flower's Estate*, 30 Penn. Dist. 967, 968; see, also, *Harry* v. *Green*, 28 Tenn. 182, 184; *Estate of Woolley*, 96 Vt. 60, 64), in which cases relief is worked out on grounds of estoppel. (*Stephens* v. *Gibbes*, 14 Fla. 331, 357, 358; *Whitesell* v. *Strickler*, 167 Ind. 602, 618; *Bullock* v. *Smith*, 201 Iowa, 247, 249; *Dougherty* v. *Barnes*, 64 Mo. 159, 162; *Daub's Estate*, 305 Penn. St. 446, 454; *Harry* v. *Green*, 28 Tenn. 182, 184; *Ludington* v. *Patton*, 111 Wis. 208, 232.)

The question in this regard is in reality closely related and complementary to that considered under question " 1 " and it must be determined that under the wording of the statute, the court is powerless to grant relief after the expiration of the initial six months' period in the absence of a demonstration of active fraud having been practiced upon the surviving spouse.

That courts of equity are as powerless to vary the direct mandate of legislative enactments as are courts of law, has been determined on innumerable occasions. On this subject the Supreme Court of Maryland said in *Collins* v. *Carman* (5 Md. 503, at p. 532): " When the law directs an act to be done, or a condition to be performed for the purpose of conferring a right, that right cannot be acquired if the act is left undone, or the condition is not performed   *   *   *. If the law makes no exception the courts can make none, whether

they be courts of law or equity; for where the construction of a statute is before them, the rules of construction are the same in both courts." To which may be added the statement in *Thompson* v. *Egbert* (17 N. J. L. 459, 462): "There is no relief against the provisions of a statute anywhere." To like effect, see *Stearns* v. *Stearns* (103 Conn. 213, 225); *Stephens* v. *Gibbes* (14 Fla. 331, 358); *Cook* v. *Bennett* (207 Ky. 837, 840); *Shelton* v. *Sears* (187 Mass. 455, 460); *Ex parte Moore* (8 Miss. 665, 668); *Dougherty* v. *Barnes* (64 Mo. 159, 162); *Akin* v. *Kellogg* (119 N. Y. 441, 447); *Minnich's Estate* (288 Penn St. 354, 358); *Waterbury* v. *Netherland* (53 Tenn. 512, 519); *Ludington* v. *Patton* (111 Wis. 208, 232, 234).

The fifth question for determination is raised by the contention of the applicant in the Lottman case that her participation in a contest of the will was a sufficient indication of her notice of election to take against it. This position is by no means novel, but whereas it has frequently been advanced under various election statutes, it has, so far as the research of the court has been able to ascertain, never been upheld. Adverse decisions may be found in *Flynn* v. *McDermott* (183 N. Y. 62, 66) and in the following cases from other States: *Scheible* v. *Rinck* (195 Ill. 636, 638); *McGrath* v. *Quinn* (218 Mass. 27); *Bunker* v. *Murray* (182 id. 335); *Minnich's Estate* (288 Penn. St. 354).

This question is but another phase of certain of those previously considered, and is merely a re-emphasis of the principle that when the Legislature has indicated a particular manner in which specified rights may be acquired, the enactment is mandatory and no substitutes therefor, or variations therefrom, are permissible. (*Pearce* v. *Pearce*, 281 Ill. 194, 198; *Bullock* v. *Smith*, 201 Iowa, 247, 249; *Bailey* v. *Hughes*, 115 id. 304, 308; *Houston's Admr.* v. *Lane*, 62 id. 291; *Whited* v. *Pearson*, 87 id. 513; *Thorpe* v. *Lyones*, 160 id. 415; *Gillespie* v. *Boisseau*, 23 Ky. L. R. 1046, 1049; *Mercer* v. *Smith*, 32 id. 1008; *McGrath* v. *Quinn*, 218 Mass. 27; *Pratt* v. *Felton*, 58 id. 174, 176; *Wilson* v. *Jarrell*, 137 Md. 558; *Stilley* v. *Folger*, 14 Ohio, 610, 647.)

In the Lottman case there is no evidence before the court that any notice of election was even served except one containing the typewritten signature: "Yours, &c., Sidney Rosenberg, Attorney for Sarah Lottman, Office & P. O. Address, 280 Broadway, Borough of Manhattan, City of New York."

Subdivision 1 of section 18 of the Decedent Estate Law gives to the surviving husband or wife "a personal right of election" against the provisions of a will subject to the later enumerated conditions. This branch of the question was reviewed by this court and pertinent authorities cited in *Matter of Mihlman* (140

Misc. 535), in which it was held that where the surviving spouse died within the period during which an election was possible, the right died with her, and was not subject to exercise by another on her behalf. In addition to the authorities therein reviewed, may be noted *Collins* v. *Carman* (5 Md. 503, 527) and *Kernan* v. *Carter* (132 id. 577, 592), in which it was held that the acts of election could be performed by no one not specified in the statute, even though the person possessing the right was *non compos mentis* at the time. The authority of these cases would not seem to be materially impaired by the decision in *Gaster* v. *Gaster* (90 Neb. 529), which held that where the facts were seasonably called to the attention of the court, it could exercise the election on her behalf.

The entire tendency of the statute is in the direction of fixing with certainty the rights of all interested parties in the estate. The reasons of public policy therefor have been reviewed and would be obvious in any event. Whereas it is not essential for the decision of these applications, it would seem that the purpose of the statute would be better subserved by a strict construction of the word " personal " in the grant of the right of election, as tending to avoid controversies as to whether or not an attorney actually had been vested with authority by his client to perform so grave and momentous an act as electing against the provisions of a will. While, in litigation, the authority of an attorney will at times be presumed, the extent of his powers is not unlimited even under such circumstances (See *Matter of Strandburg*, 138 Misc. 732, 737), and it is a grave question whether a mere appearance for the purpose of making an election, as in the alleged notice in the present case, would carry with it even a presumption of authority to perform the act. However this may be, it would seem that a totally unsigned document such as is alleged to have been served in the Lottman case would be insufficient since it might precipitate not only litigation respecting the authority of the attorney to make the election, but also, by reason of the subscription being only in typewriting, as to whether he had actually done so.

For the reasons and on the authority stated, therefore, the applications must be denied.

Proceed accordingly.